# GULF LAND COMPANY ET AL V. ATLANTIC REFINING CO. ET AL.

No. 7521. Decided July 26, 1939.
Rehearing overruled October 25, 1939.
(131 S. W., 2d Series, 73.)

60

*William McCraw,* former Attorney General; *Gerald C. Mann,* Attorney General; *Chas. D. Rutta,* Former Assistant Attorney General; *Edgar W. Cale,* Assistant Attorney General, for plaintiff in error, Railroad Commission; *W. B. Harrell,* of Dallas; *Henry H. Brooks,* of Austin, for plaintiff in error, Gulf Land Company.

The judgment of the Court of Civil Appeals is not and could not have possibly been based upon a ruling that the Commis-

sion's rehearing rule deprived it of power and jurisdiction to grant the permit in suit at the time and in the manner such permit was granted. The Commission had the power to grant the permit in suit at the time and in the manner such permit was granted. Magnolia Pet. Co. v. New Process Prod. Co., 104 S. W. (2d) 1106; 31 Tex. Jur., 119, sec. 108; Vernon's Ann. Stat. Arts. 2092, 2232.

A tract subdivided after oil and gas is discovered, which was not at any drainage disadvantage at the time of the subdivision, is not forever thereafter deprived of all protection from such drainage occasioned by wells drilled under permits issued after the subdivision occurred, which subsequent wells constitute changed conditions arising after the subdivision. Stanolind Oil Co. v. Railroad Commission, 107 S. W. (2d) 633; Murphy v. Turman Oil Co., 97 S. W. (2d) 485; Empire Gas & Fuel Co. v. Railroad Commission, 94 S. W. (2d) 1240.

*Powell, Wirtz, Rauhut & Gideon,* and *C. B. Jeffrey,* for Hawkeye Petroleum Company, *C. B. Ellard* and *Black, Graves & Stayton* for Atlantic Refining Company, all of Austin, for the defendants in error.

Defendants in error having proved that a well drilled pursuant to the permit granted to the Gulf Land Company will drain oil from their leases gives to them sufficient standing to litigate the validity of the permit. Dallas Coffee & Tea Co., v. Williams, 45 S. W. (2d) 724; Peden Iron & Steel Co. v. Jenkins, 203 S. W. 180; Commercial Acceptance Tr. v. Parmer, 241 S. W. 586.

*J. W. Wheeler,* of Austin, filed brief as amicus curiae.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This is a Rule 37 case. When oil was discovered in East Texas on or about October 12, 1930, one Willis Smith owned in such field 128 acres of land, all in one tract. On January 14, 1931, Willis Smith leased 39.98 acres of the above 128-acre tract to one Byrd, and through mesne assignments this 39.98-acre tract now belongs to Atlantic Refining Company.

On January 28, 1931, Willis Smith leased to Hudson et al. 43 acres of the above 128-acre tract. This 43-acre tract was later subdivided into smaller tracts. One of these subdivisions contains 6.88 acres. This 6.88-acre tract is involved in this suit. Another subdivision of the 43-acre tract contains 23 acres, and now belongs to Hawkeye Petroleum Corporation. We do

not attempt to trace the title to the balance of the 128-acre tract, as to do so would serve no purpose here.

At the time the above 6.88-acre tract was segregated from the 43-acre tract, and at the time the 128-acre tract was subdivided, the spacing provisions of Oil and Gas Rule 37 was 150-300 feet. By this was meant that no well could be drilled at any point less than 150 feet from any property or division line, or at any point less than 300 feet from any other well, unless a special permit was secured. As we understand this record, at the time the 6.88-acre tract was segregated from the larger tract of which it was then a part, it, the 6.88-acre tract, was capable of being developed as a whole under Rule 37 as it then existed, without the necessity of granting an exception as provided for in such rule. At this point we pause to note that Rule 37 as it then existed provided for exceptions to its spacing provisions "in order to prevent waste or protect vested rights."

On February 25, 1932, the Railroad Commission amended the oil and gas rule as applicable to oil and gas wells in the East Texas field so that it read as follows:

"RULE 1. (a) Rule 37, adopted November 26, 1919, is hereby amended in so far as it applies to the East Texas Field so as to hereafter read as follows: No well shall hereafter be drilled for oil or gas at any point less than Six Hundred and Sixty (660) feet from any drilling or completed well; and no well shall hereafter be drilled for oil or gas at any point less than Three Hundred and Thirty (330) feet from any property or division line; provided, however, the Commission, in order to prevent waste or to protect vested rights, will, after hearing, grant exceptions permitting drilling within a less or shorter distance than hereinabove prescribed, upon application duly filed fully stating the facts, notice of such application and hearing having been first given to all adjacent lessees affected thereby; provided, that if all adjacent lessees affected thereby waive in writing, notice of hearing on or objection to the granting of said application, the Commission may proceed to determine such application without hearing."

On May 29, 1934, oil and gas Rule 37 was again amended so that it now reads as follows:

"IT IS HEREBY ORDERED by the Railroad Commission of Texas that Rule No. 1 of Subdivision II. (Drilling) of Division 3, be-

ing special rules governing the East Texas field, is hereby amended so as hereafter to read as follows:

"RULE I. SPACING RULE. No well for oil or gas shall hereafter be drilled in said East Texas field nearer than 660 feet to any other completed or drilling well on the same or adjacent tract or farm; and no well shall be drilled in said field nearer than 330 feet to any property line, lease line, or subdivision line; provided that the Commission in order to prevent waste, or to prevent the confiscation of property will grant exceptions to permit drilling within shorter distances than above prescribed whenever the Commission shall determine that such exceptions are necessary either to prevent waste or to prevent the confiscation of property. When an exception to such rule is desired, application therefor shall be filed with the Commission fully stating the facts, which application shall be accompanied by a plat drawn to the scale of one inch equaling four hundred feet, accurately showing to scale the property on which permit is sought to drill a well under an exception to this rule, and accurately showing to scale all other completed, drilling and permitted wells on said property; and accurately showing to scale all adjacent surrounding properties and wells. Such application shall be verified by some person acquainted with the facts, stating all facts therein stated are within the knowledge of the affiant true, and that the accompanying plat is accurately drawn to scale and correctly reflects all pertinent and required data. Such exception shall be granted only after at least ten days' notice to all adjacent lessees affected thereby has been given and after public hearing at which all interested parties may appear and be heard, and after the Commission has determined that an exception to such rule is necessary either to prevent waste or to protect property belonging to applicant from confiscation. All pending applications shall be amended to conform to this rule before being acted upon.

"No well drilled in violation of this rule without special permit obtained in the manner prescribed in said rule, and no well drilled under such special permit which does not conform in all respects to the terms of such permit, shall be permitted to produce either oil or gas; and any such well so drilled in violation of said rule or in violation of a permit granted as a special exception to said rule shall be plugged.

"The order entered by this Commission on August 30, 1933, commonly designated as the direct and equidistant offset order is hereby rescinded, annulled and shall be of no further force and effect. All other rules, regulations and orders of this Com-

mission which conflict with the terms and provisions of Rule No. 1 as hereby amended and promulgated are hereby declared to have no further application to wells in said East Texas field to the extent of such conflict.

"In the adoption and promulgation of this order it is here declared that the Commission intends to adopt each phrase, sentence, and paragraph separately and independently of each other such phrase, sentence and paragraph, and if any portion of this order or any portion of the rule hereby adopted shall be declared invalid, such declaration and such invalidity shall not affect any other portion."

On May 29, 1934, the day oil and gas Rule 37 was amended to read as just above set out, the Railroad Commission adopted another order which to our minds has the same force and effect as a rule. Such order reads as follows:

"IT IS ORDERED by the Railroad Commission of Texas that in applying Rule 37 (SPACING RULE) of Statewide application and in applying every special rule with relation to spacing in every field in this State no subdivision of property made subsequent to the adoption of the original spacing rule will be considered in determining whether or not any property is being confiscated within the terms of such spacing rule, and no subdivision of property will be regarded in applying such spacing rule or in determining the matter of confiscation if such subdivision took place subsequent to the promulgation and adoption of the original spacing rule."

On August 30, 1933, the Railroad Commission entered the following order, which we think also has the effect of a general rule:

"IT IS HEREBY ORDERED BY THE RAILROAD COMMISSION OF TEXAS that in all orders, judgments, and decrees written by the Railroad Commission of Texas, no motion for a new trial shall be filed or entertained unless it is filed within twenty (20) days after such order, judgment, or decree has been rendered and entered of record. It must be filed in writing and signed by the applicant or by his attorney, specifying the grounds on which it is founded. No ground not specified shall be considered by the Commission."

This suit involves the validity of an order of the Railroad Commission entered on July 29, 1936, granting Gulf Land Company a permit to drill a second well on a tract of 2.35 acres of land. The 2.35-acre tract was a part of the 6.88-acre tract

above mentioned. The 6.88-acre tract is, roughly speaking, a triangular tract. At the time the permit here questioned was granted, the 6.88-acre tract had been subdivided into six smaller tracts, each owned by a separate owner. Each of these six smaller tracts had one producing well thereon. The subdivision of the 6.88-acre tract into six smaller tracts took place after it was segregated from the larger tract of which it was then a part. We presume that each of the wells in operation on each of the six smaller tracts at the time this permit was granted had been lawfully granted. We indulge this presumption because this record contains nothing to the contrary. Finally, it is evident that at least five of the six wells on the 6.88-acre tract must have been drilled under one of the exception provisions of Rule 37, supra.

The following diagram or map shows the 6.88-acre triangular tract in substantial form. We do not attempt to make it exact.

The wells we have indicated on the above diagram are the wells as they existed prior to the issuance of the permit for the well here contested.

The permit here contested was granted to Gulf Land Company for a second well on its 2.35-acre tract indicated on the above plat. The well here contested is located 87 feet west of the east line of the 2.35-acre tract, and 96 feet north of the south line thereof. If we understand this record, Hawkeye

Petroleum Corporation owns the oil and gas lease contiguous to this 6.88-acre tract on the south, and Atlantic Refining Company owns the lease contiguous to the 6.88-acre tract on the north. We do not understand that there is any question about the right of the two corporations last above named to contest this permit, and they are here doing so.

On June 8, 1934, Gulf Land Company, as the owner of the lease on the 2.35-acre tract, which, as already stated, then had one producing well thereon, near the center thereof, applied to the Railroad Commission for a permit to drill a second well on such tract. This application was duly heard and denied by the Commission. The denial was based on a finding that the 2.35-acre tract was a voluntary subdivision of the 6.88-acre tract, and no additional well was needed on the 6.88-acre tract to prevent drainage of such 6.88-acre tract. The record shows no appeal from such order.

On April 29, 1935, Gulf Land Company made another application to the Commission. This application was for a permit to drill two additional wells on the above-mentioned 2.35-acre tract. At the time such application was filed, the 6.88-acre tract had six producing wells thereon, as indicated by the above plat. This application was heard and denied by the Commission on May 29, 1935. No further action was had in regard to the application just mentioned until June 29, 1936, when Gulf Land Company filed a motion for rehearing. It appears that on the same day this motion for rehearing was filed the Commission entered an order to the effect: "It is ordered that the motion for rehearing filed herein by Tom C. Patten, attorney for Gulf Land Company, is hereby granted." This is the only order entered on the motion for rehearing. This order did not grant any well permit.

On the same day the order granting motion for rehearing was entered, as above indicated, Gulf Land Company filed a new and independent application for a permit to drill two additional wells on this 2.35-acre tract. This last application was set for hearing on July 20, 1936, and due notice issued and served on all interested parties. On July 20, 1936, the Commission heard the application of Gulf Land Company filed on June 29, 1936, and thereafter on July 27, 1936, granted same as to one well only, by entering the following order:

"The application of Gulf Land Company for an exception under the provisions of Rule 37 coming on to be heard on the 20th day of July, 1936, by the Railroad Commission of Texas, and it appearing that the petition shows good cause; that no

injustice will be done by the granting of such exception, and that same should be granted to prevent confiscation of property:

"NOW, THEREFORE, IT IS ORDERED that the application of Gulf Land Company for an exception under the provisions of Rule 37 and a permit to drill well No. 2 on the Willis Smith 2.52 acre tract J. S. Caruthers Survey, Gregg County, Texas, as shown by plat submitted, is hereby approved, and applicant is granted permission to drill well No. 2, to be spaced as follows:

"No 2—87 feet west of the east line;
 96 feet north of the south line;

"IT IS FURTHER ORDERED that well No. 3 be denied.

"ENTERED at Austin, Texas, on this the 27th day of July, 1936."

■ Counsel for the contestants of this permit contend that it is void because it was granted after the Commission had granted a motion for rehearing filed more than 20 days after the Commission had entered an order denying it. It is true that the Commission has a rule providing that such motions shall be filed within 20 days "after such order, judgment, or decree has been rendered and entered of record." We think the Commission is bound by its own rules, and is therefore bound by this rule. In spite of this, we think this record shows no violation of this 20-day rule. The order granting this permit was entered on a new and independent application, and after due notice and hearing thereon. The mere fact that the Commission had twice before refused this well permit did not deprive it of jurisdiction to grant it in response to the new application. In other words, such former orders did not in any way hamper or prevent the Commission from again reviewing the question with all the powers it had in the first instance. Magnolia Petroleum Co. v. New Process Production Co., 129 Texas 617, 104 S. W. (2d) 1106. The motion for rehearing and the order granting it can be ignored, and the procedure pertaining to the granting of this permit sustained.

■ Before proceeding further, we wish to say that we do not understand that the Commission, by the promulgation of Rule 37, has undertaken to say that it will be presumed that any well drilled at lesser distances than the minimum spacing distances named in the rule will cause waste, in the sense that in such instances oil will ultimately be lost in the ground that would be saved if such minimum spacing distances were observed. The Commission is charged generally with the conservation of oil and gas in their production, storage, and transportation. Art. 6014, as amended. The Commission must make rules, regulations, and orders to accomplish conservation of oil and gas.

Art. 6029, as amended. One of the things that the Commission must do to conserve oil and gas is to see that oil and gas fields are drilled in an orderly and scientific manner. In order to accomplish orderly drilling, the Commission has simply promulgated a rule fixing minimum spacing distances at which wells may be drilled without application, notice, or hearing. Any one desiring to drill a well at a lesser distance must secure a special permit, after notice and hearing. Such applicant assumes the burden of proof that such well is necessary to prevent waste, or to prevent the confiscation of property. After the Commission acts, its order either way is presumed to be valid. Railroad Commission v. Magnolia Petroleum Co., 130 Texas 484, 109 S. W. (2d) 967. Simply stated, the Commission must supervise the development of oil and gas fields. In order to do this, it has the power to devise some reasonably definite plan or pattern to start with. It has devised a plan or pattern by which it starts by allowing wells to be drilled, as a matter of course, at certain minimum distances. After that, in order to drill wells, special permits must be had. We will later further discuss this matter.

It will be noted that oil and gas Rule 37 permits exceptions "to prevent waste, or to prevent confiscation of property." The Commission has not seen fit to define either the term "waste" or the term "confiscation." We are here compelled to define such terms.

■ The term "waste," as used in oil and gas Rule 37, undoubtedly means the ultimate loss of oil. If a substantial amount of oil will be saved by the drilling of a well that otherwise would ultimately be lost, the permit to drill such well may be justified under one of the exceptions provided in Rule 37 to prevent waste. We will deal further with this question later in this opinion.

■■ The term "confiscation" is a word capable of being used in many senses. Webster's International Dictionary; 15 C. J. S. 827. It is impossible to give a general definition which can be applied in all instances. Usually the meaning of the word must be ascertained from the context. As used in Rule 37, the term evidently has no reference to "waste." The two words, "waste" and "confiscation," are connected by a disjunctive conjunction. Under the rule, tracts subdivided subsequent to Rule 37 may be protected against "waste," while tracts so subdivided, as such, are not protected against "confiscation." As used in Rule 37 and the Rule of May 29th, the term "confiscation" evidently has reference to depriving the owner or lessee of a fair

chance to recover the oil and gas in or under his land, or their equivalents in kind. It is evident that the word refers principally to drainage. Under one of the exceptions in Rule 37, well permits may be granted to prevent "confiscation." It is the law that every owner or lessee of land is entitled to a fair chance to recover the oil and gas in or under his land, or their equivalents in kind. Any denial of such fair chance would be "confiscation" within the meaning of Rule 37 and the Rule of May 29th. Empire Gas & Fuel Co. v. Railroad Commission (Tex. Civ. App., writ refused), 94 S. W. (2d) 1240. The right to be protected against "confiscation" under Commission oil and gas rules is not absolutely unconditional or unlimited. We will now discuss the condition or limitation which the Rule of May 29th has imposed or engrafted on the right to be protected against "confiscation."

■ An examination of the order or rule of May 29, 1934, hereinafter referred to as the Rule of May 29th, will show that subdivisions of land, as such, which have or hereafter may come into existence after Rule 37 became effective are not protected at all against confiscation. When Rule 37 and the Rule of May 29th are read together, it is evident that exception permits may be issued to protect such tracts from waste; but such exception permits cannot be issued to protect such tracts, as such, from confiscation. In this regard, the Rule of May 29th states "no subdivision of property made subsequent to the adoption of the original spacing rule will be considered in determining whether or not any property is being confiscated within the terms of such spacing rule, and no subdivision of property will be regarded in applying such spacing rule or in determining the matter of confiscation if such subdivision took place subsequent to the promulgation and adoption of the original spacing rule." To our minds, language could not be made plainer, or more all inclusive. Railroad Commission v. Magnolia Petroleum Co., 130 Texas 484, 109 S. W. (2d) 967, supra.

■ The Rule of May 29th, supra, uses the term "subdivision" in defining tracts of land that have no protection from confiscation. The Commission has not seen fit to define such term, and ordinarily it would not require a definition, because any tract of land segregated from a larger tract would constitute a subdivision. It is obvious that the term "subdivision," as used in the order or rule under discussion, has no such general meaning. If such a meaning should be given the term, a partition or division of a 1000-acre tract of land into two 500-acre tracts would constitute a subdivision of the land under the rule.

Manifestly, such a construction of the rule would be absurd, because the two 500-acre tracts would come under its ban against subdivision, while tracts of much smaller area which do not constitute subdivisions after the effective date of Rule 37 would not. As we construe the rule pertaining to "subdivision" subsequent to the effective date of Rule 37, it means that where a tract of land is of such size and shape that it is necessary to obtain a permit as a special exception to the spacing provision of Rule 37 before a well can be drilled thereon, such a tract will be regarded as a subdivision within the meaning of the Rule of May 29th, supra, if it was subdivided out of a larger tract after Rule 37 became effective. Humble Oil & Refining Co. v. Railroad Commission (Tex. Civ. App., writ refused), 94 S. W. (2d) 1197; Flavey v. Simms Oil Co. (Tex. Civ. App.), 92 S. W. (2d) 292.

Our oil and gas conservation statutes in express terms constitute the Railroad Commission as the administrative agency charged with their enforcement. The Commission is charged with the duty and clothed with the power to make and enforce "rules, regulations or orders for the conservation of crude petroleum oil and natural gas and to prevent the waste thereof," etc. Art. 6029, Vernon's Civil Statutes, 1936.

 Under our oil and gas conservation statutes "Any interested person affected * * * by any rule, regulation or order made or promulgated by the Commission thereunder, * * * shall have the right to file a suit in a court of competent jurisdiction in Travis County, Texas, and not elsewhere, * * * to test the validity of said laws, rules, regulations or orders. * * * In all such trials, the burden of proof shall be upon the party complaining of such laws, rule, regulation or order; and such laws, rule, regulation or order complained of shall be deemed prima facie valid." Sec. 8 of Art. 6049c, Vernon's Civil Statutes, 1936. Under the above statute the suit there provided for must be filed in a district court located in Travis County. It is too plain to admit of debate that, under our oil and gas conservation statutes, the Commission, being the statutory enforcement agency, must, as a general rule, also be the primary, or original, statutory fact finding agency. The Commission is given the power and is charged with the duty to make original rules and orders, proper and necessary to carry out and effectuate the aims and purposes of such statutes. Under such a law, the Commission must of necessity ascertain facts and make fact findings. Of course, such fact findings may be made either expressly or by implication. In ascertaining and making fact

findings the Commission exercises quasi judicial powers. It should therefore always approach each case with a judicial bearing, with but one purpose and aim in view, and that to make a fair finding.

██ ██ As already noted, our oil and gas conservation statutes provide an appeal from the Commission to the District Court of Travis County, Texas. The action before us here is such an appeal. In ordinary civil actions the district court, or any other trial court, exercises original jurisdiction to find and determine all fact questions, as well as all law questions. The action provided by statute for an appeal to a district court of Travis County to review the rules and orders of the Commission is clearly not an ordinary civil action. To the contrary, it is a special statutory action to enforce a right which exists only by statute, and not under the Constitution or at common law. Alpha Petroleum Co. v. Terrell, 122 Texas 257, 59 S. W. (2d) 364 Id. 372. It is the undoubted intention of the statutes under discussion to clothe the district court with all of its constitutional and statutory jurisdiction in passing on all questions of law which arise in the appeal from the Commission to such court. We encounter no difficulty in reaching this conclusion. The duty of defining the jurisdiction of the court to hear and determine fact questions under our oil and gas conservation statutes has given us very grave concern.

██ Administrative boards or commissions have been set up in this State to perform many functions and purposes. We will not here attempt to classify these functions or purposes. The Railroad Commission is constituted the statutory agency to execute and enforce our oil and gas conservation statutes. In enacting such statutes, the State is seeking to regulate a business affected with a public interest. Oil and gas are very vital parts of our natural resources, and the public generally is very vitally concerned therein. It follows that the business of producing, storing, and transporting oil and gas is a business affected with a public interest and subject to regulation by the State. Brown v. Humble Oil & Ref. Co., 126 Texas 296, 83 S. W. (2d) 935, 99 A. L. R. 1107; Art. 6014, R. C. S. 1925, as amended. It is settled that under our oil and gas conservation statutes Rule 37 is a valid rule. Also, we think the Rule of May 29th is a perfectly valid rule.

██ As already indicated, we hold that the appeal provided by Section 8 of Article 6049c, supra, contemplates that the district court shall exercise its general jurisdiction in determin-

ing or deciding all questions of law arising under such action. We think, however, that, generally speaking, the law contemplates that the Commission shall be left free to finally determine controverted issues of fact. Rule 37 permits wells to be drilled at lesser distances than the minimum spacing distances named therein to prevent waste and to prevent the confiscation of property. These well permits are generally referred to as exceptions. The rule and the law contemplates that the Commission shall determine any controverted fact question necessary or proper to be determined in passing upon applications for such exceptions. To our minds, the law contemplates that the fact findings made by the Commission in passing upon such applications are subject to review and correction by the courts only to the limited extent hereinafter stated. The court, on appeal from the Commission's order, should not set aside an order of the Commission either granting or refusing to grant a well permit unless such order is illegal, unreasonable, or arbitrary. In so far as the fact findings upon which the order is based are concerned, the order is not illegal, unreasonable, or arbitrary if it is reasonably supported by substantial evidence. Stated in another way, the court does not act as an administrative body to determine whether or not it would have reached the same fact conclusion that the Commission reached, but will consider only whether the action of the Commission in its determination of the facts is reasonably supported by substantial evidence. 34 Tex. Jur., p. 712, sec. 11, and authorities there cited. To permit the court to substitute its fact findings on controverted issues of fact in such instances would add nothing of value to the administration of the law or the rule under discussion, but, to the contrary, would destroy all uniformity of Commission administration thereunder. We here pause to remark that conditions as they existed at the time the Commission acted are the determining factors.

As shown by the order granting the permit here attacked, it was granted on a specific finding that it was necessary to prevent the confiscation of property. In this regard the order recites: "The application of Gulf Land Company for an exception under the provisions of Rule 37 coming on to be heard, * * * and it appearing * * * that same should be granted to prevent confiscation of property." As we understand this record, it is undisputed that a 128-acre tract was subdivided; that one of these subdivisions was a 43-acre tract; that the 43-acre tract was subdivided; that one of the tracts the 43-acre tract was subdivided into was the 6.88-acre tract

here involved; that the 6.88-acre tract was subdivided into six smaller tracts; and that the 2.35-acre tract here involved is the largest of these six subdivisions of the 6.88-acre tract. It is also undisputed that all of the above subdivisions took place after Rule 37 became effective; that each of the six subdivisons of the 6.88-acre tract has a producing well thereon; that the 2.35-acre tract is not getting its fair share of the oil from the one well located thereon, as compared with the other five subdivisions of the 6.88-acre tract; and that if the 6.88-acre tract is considered as a unit, it is getting its fair share of oil, as compared with the area surrounding it proper to be considered in making such comparison. At this point we refer to the opinion of the Court of Civil Appeals for detailed facts with reference to these matters. Finally, it is undisputed that the 6.88-acre tract, before it was subdivided, was of sufficient area and of such shape that it could be developed by a regular location. When such 6.88-acre tract was subdivided, exceptions first became necessary to develop such subdivisions. Under such a record, there is no possible escape from the conclusion that, as a matter of law, the Commission violated its Rule of May 29th in granting this well permit to prevent the confiscation of property. As already shown, this permit is on a tract of 2.35 acres of land. This 2.35-acre tract was constituted a subdivision after Rule 37 became effective in this oil field, and as to this land. This 2.35-acre tract already has one well thereon. Also, such tract is a subdivision within the meaning of the Rule of May 29th. When the 6.88-acre tract out of which this 2.35-acre tract was subdivided is considered as a unit, no well is needed thereon to prevent confiscation. Under the plain and unambiguous language of the Rule of May 29th, the 2.35-acre tract, considered apart from the 6.88-acre tract, can have no rights to a well to prevent confiscation. Railroad Commission v. Magnolia Petroleum Co., 130 Texas 484, 109 S. W. (2d) 967. In the case just cited we clearly announced it as the law that under Rule 37, and the Rule of May 29th, subdivisions of property made subsequent to the promulgation of the original spacing rule should not be considered on the issue of confiscation. The Rule of May 29th so states in language too plain to admit of construction. We quote the following approved quotation from the opinion under discussion:

"It is manifest, therefore, that, where a situation which would circumvent the rule is created by voluntary act, acquiescence, or connivance of the parties after the rule has attached to the property, such situation cannot be asserted as

a valid ground for exception to the rule. The parties, in that event, are relegated to their rights as they existed prior to the creation of such situation. Humble Oil & Refining Co. v. Railroad Commission et al., 68 S. W. (2d) 625."

Under the rule as stated in the above quotation, it is too plain to admit of debate that any right that this 2.35-acre tract can have to this well to prevent confiscation must be relegated to the rights of the 6.88-acre tract out of which it was subdivided subsequent to the spacing rule.

■ If we properly interpret their brief and argument, counsel for Gulf Land Company, the holder of this well permit, contend that since the Commission has permitted the owners of the other five subdivisions of the 6.88-acre tract to drill and operate a well on each of said tracts, and since each of such subdivision is getting more than its fair share of oil, as compared with the 2.35-acre subdivision belonging to Gulf Land Company, a change of conditions has been brought about. It seems to be then contended that since oil under the 2.35-acre tract is being confiscated, or taken for the benefit of the other subdivisions under discussion, this permit should be upheld to prevent confiscation. To sustain this contention would be to either destroy the rule against subdivision or to, by judicial fiat, write therein a provision which the Commission has not seen fit to make a part thereof. The Rule of May 29th just simply prohibits well permits on subdivisions effected subsequent to Rule 37 for the purpose of preventing confiscation of property. No exception is contained therein relating to changed conditions, and we have no authority, by judicial construction, to add to the rule something that would so radically change it as to almost destroy it.

■ If we further properly interpret the briefs and arguments of counsel for Gulf Land Company, they contend that there is substantial evidence in this record to uphold this permit to prevent waste. As we interpret Rule 37 and the Rule of May 29th, the fact that a tract of land is a subdivision within the meaning of the rule last mentioned is no impediment to the granting of a well permit thereon as an exception under Rule 37 to prevent waste. In other words, the rule pertaining to subdivisions has no application to well permits granted to prevent waste. In this case we are unable to uphold this permit on the waste theory, because the Commission made no finding on that question, and we are unable to say, as a matter of law, that this record shows a necessity for this well for such purpose.

■ In the opinion in Magnolia Petroleum Co. v. Railroad Commission, 130 Texas 484, 109 S. W. (2d) 967, supra, we held that we would not measure the validity of Commission orders in cases of well permits "by the reasons it gives for the same." We also in such opinion further held: "It is no longer an open question that such order or ruling may be supported upon a ground different from that recited in the order, which of course is but another way of stating that courts are not bound by the reasons given by the Railroad Commission, nor by any particular ground made the basis of its ruling, provided of course another valid basis is shown for same." We still adhere to the above holdings. They mean that we will sustain a Commission order if it is correct on any theory of law applicable to the case, and that regardless of whether or not the Commission gives a correct legal reason for such order, or whether or not it gives any reason at all therefor. Such rule, however, cannot mean that the district court can determine a material controverted fact question which was not passed on at all by the Commission in order to sustain a Commission order. To permit the court to do that would be to violate the very fundamental rule that the Commission determines primarily and finally all fact issues,—that is, all issues that are not established as a matter of law.

■ Still discussing the above matter, it is the rule as applied to trial courts in civil cases that an appellate court will not determine a material issue of fact and render judgment thereon, when such issue was not passed on or considered by the trial court. In this connection, if the case is tried before the court without a jury, and the court makes express findings of fact on which he bases his judgment, a reviewing court will not consider other controverted fact issues not considered by the trial court to uphold such judgment. 3 Tex. Jur., p. 1005, sec. 718, and authorities there cited. It is also the rule that an appellate court will sustain the judgment of a trial court if it is correct on any theory of law applicable to the case, and that regardless of whether the trial court gives the correct legal reason for the judgment he enters, or whether he gives any reason at all. 3 Tex. Jur., p. 1008, sec. 719, and authorities there cited. We think the above rules should apply with double emphasis to cases of this kind where the Commission must make fact finding in the first instance. In the case at bar, if the Commission had merely made a general finding of fact, or if it had made no express finding of fact at all, we could and would presume all controverted fact issues as found in

favor of the order entered. This we cannot do in the face of a specific finding in regard to the issue of confiscation, and no fact finding on the issue of waste.

It may be argued that the statement is this order that this well "should be granted to prevent confiscation of property" is not a fact finding, but merely a conclusion of law. The best that can be said in favor of the validity of the order is that it is a mixed finding of both law and fact. To say the very least, it, in effect, states that the Commission granted this permit on both a law and a fact finding of confiscation. Under such a record we cannot indulge the presumption that the Commission also found that this well was necessary to prevent waste; neither can we say that the district court can make such finding in order to uphold this permit.

It seems to be contended that this permit should be upheld on the theory that this record shows conclusively that it was necessary to prevent waste. If facts are conclusively shown or proved, no fact question is involved, and only a law question remains. It follows that if the right to this well to prevent waste in conclusively shown by this record, this well permit should be upheld as a matter of law. If we properly interpret the position taken by counsel for the holder of this well permit, the above contention is based on the fact that the Commission once made a general fact finding that, "the more wells that are drilled, the greater will be the recovery from any given pool." It seems to be also contended that this record shows conclusively that the Commission was correct in the above finding. For the purposes of this opinion we will admit it to be true, as a matter of law, that as a general rule, "the more wells that are drilled, the greater will be the recovery from any given pool," still it would not follow, as a matter of law, that the Commission would be compelled to issue every permit for every well applied for as an exception under Rule 37 in every oil field in Texas to prevent waste. Such a conclusion would destroy the spacing provisions of Rule 37, and so cripple our oil and gas conservation statutes as regards production as to make them, in that respect, of little practical value. A reading of our oil and gas conservation statutes shows that they deal with almost the entire field of oil and gas conservation, above, as well as below, ground. We here call especial attention to Article 6014, R. C. S. 1925, as amended, covering matters of waste, and Article 6029, R. C. S. 1925, as amended, covering the powers and duties of the Commission in making and enforcing rules, regulations, and orders for the conservation of oil and gas. As already indicated, it is just as

important to conserve oil and gas after they have been produced or saved from the ground as it is to conserve such products in the production thereof. It would profit little to so manage an oil field or pool as to obtain the greatest possible ultimate production, and then allow such oil to go to waste after it has been produced. We therefore hold. that in passing on the question as to whether or not a well permit should issue as an exception to the spacing provisions of Rule 37 to prevent waste, the Commission is not compelled to absolutely confine itself to the lone question as to whether such well will save oil that otherwise would be lost, but may also take into consideration waste above the ground, and the orderly and scientific development of the field.

In deciding the issue of granting or refusing a well permit as an exception to Rule 37 to prevent waste, the Commission should be left reasonably free to exercise its sound judgment and discretion. The Commission should bear in mind, however, that it is its duty to conserve oil and gas above ground as well as below. In administering our oil and gas conservation statutes, the Commission must be fair, and must not indulge in unreasonable discriminations between different oil fields, or between different tracts of land in the same field. In determining the issue of fairness or discrimination, some latitude must be allowed, because the subject of administration is so vast, complex, and complicated that its administrative agency cannot be placed in an absolute strait jacket. In Bain Peanut Co. v. Pinson, 282 U. S. 499, 51 Sup. Ct. 228, 75 L. Ed. 482, Judge Holmes, in passing on the contention that a certain Texas statute was unconstitutional because discriminatory, said: "We must remember that the machinery of government would not work if it were not allowed a little play in its joints." To paraphrase the above quotation, we will say: We must remember that the machinery of our oil and gas conservation statutes would not work if it were not allowed a little play in its joints. In connection with the above, we here again repeat and reaffirm what we said in the opinion on rehearing in Brown v. Humble Oil & Refining Co., supra: (126 Texas 314, 87 S. W. (2d) 1069, 101 A. L. R. 1393).

"We recognize that the Railroad Commission is authorized to make rules relating to the production of oil and gas. This Court will not undertake to prescribe any rule or standard to guide the Commission, except that its actions must be legal, reasonable, and not arbitrary. There are many factors, facts and circumstances, which we shall not undertake to detail here,

in each case and in each hearing, which must be considered, weighed and given effect, in the fair and reasonable administration of such laws, rules, and exceptions. All questions of fact are primarily for the Commission to determine.

"We held in the original opinion, and reiterate it here, that the Legislature enacted certain laws which declare the public policy of the State with respect to the development and conservation of oil and gas, and placed the duty upon the Railroad Commission to carry out the details. The duty is lodged with the Railroad Commission to make rules to carry out the mandates of the Legislature, and to impartially enforce them. In the exercise of its power to grant exceptions to its rules, it is the duty of the Commission to treat all interested parties justly, fairly, and impartially under all the facts and circumstances of the case; and the actions and rulings of the Commission in attempting to accomplish such results will not be disturbed by the courts, unless they are clearly illegal, unreasonable, or arbitrary. All rules and rulings of the Railroad Commission are presumed to be valid until the contrary is made to appear. If a rule of the Commission is found to be illegal or invalid by a court of competent jurisdiction, such court may so adjudge. The court cannot substitute a new rule for the one adjudged invalid. That power rests exclusively with the Railroad Commission."

■ It will be noted that Section 8 of Article 6049c, supra, provides no time within which suit to test the validity of the rules, regulations, and orders of the Commission shall be filed in the District Court of Travis County, Texas. The very nature of the appeal thus provided would make it very difficult for the Legislature to frame a just statute to apply in all instances. We think, however, that unreasonable delay in appealing orders pertaining to well permits which cause the opposite party to act, to his injury, might give rise to a question of estoppel.

In this opinion we have not attempted to discuss and review all the opinions that have been written by the Courts of Civil Appeals in regard to the matter we have discussed and decided. In regard to such opinions, we will simply say that if there are any conflicts between such opinions and this opinion, the views expressed in this opinion shall prevail.

It is evident from what we have said that we hold that the Commission violated its own order in issuing this well permit to prevent confiscation of property. The judgment of the Court of Civil Appeals so adjudges. We therefore affirm such judgment.

Opinion delivered July 26, 1939.

Rehearing overruled October 25, 1939.