**HUMBLE OIL & REFINING CO. et al. v. TURNBOW et al.**

**No. 8842.**

Court of Civil Appeals of Texas. Austin.

Oct. 18, 1939.

Rehearing Denied Nov. 15, 1939.

John E. Green, Jr., and Joe S. Brown, both of Houston, and Stanley Hornsby, of Austin, for appellant Gulf Oil Corporation.

R. E. Seagler and H. E. Bell, both of Houston, and Powell, Wirtz, Rauhut & Gideon, of Austin, for appellant Humble Oil & Refining Co.

Gerald C. Mann, Atty. Gen., and Edgar Cale, Asst. Atty. Gen., for appellee Railroad Commission of Texas.

Carl L. Phinney, of Dallas, and Felts, Wheeler & Wheeler, of Austin, for appellees W. C. Turnbow and W. C. Turnbow Petroleum Corporation.

BLAIR, Justice.

This is a Rule 37 case. It involves the validity of the special permits to reopen and operate two oil wells drilled on a 2½-acre tract of land out of the Sanches Survey, Gregg County, in the East Texas Oil Field. The land, the wells, and the parties (except appellee W. C. Turnbow Petroleum Corporation) were involved in the cases of Barnsdall Oil Company et al. v. Railroad Commission et al., 90 S.W.2d 663; Turnbow et al. v. Barnsdall Oil Co. et al., 99 S.W.2d 1096, heretofore before this court. In the first case it was held that the permits to drill the two wells, issued September 25, 1934, were invalid because issued without notice to the proper parties. In the second case it was held that the permits, issued November 9, 1934, covering the same two wells were invalid for two reasons: (1) because the agreed judicial partition of the 2½-acre tract constituted a voluntary subdivision of it from the larger 41-acre tract, in violation

of special Rule 37 then applicable to the East Texas Oil Field; and (2) because the question of the validity of the permits to drill the two wells was still pending in the first suit when the second permits were issued; and that the Commission therefore had no jurisdiction. After the judgments became final in these cases, appellees filed an application to reopen and to operate the two wells upon the ground of changed conditions; and on September 23, 1937, the Commission after notice and hearing granted the special permits to reopen and to operate the two wells, reciting as basis for the order the following facts:

"* * * and it appearing to the Commission that 22 wells had been drilled in the area immediately surrounding said 2½-acre tract since permits to drill said wells 1 and 2 were originally granted by the Railroad Commission of Texas, and that in view of such changed conditions and the additional wells so drilled in said area, the Railroad Commission of Texas should grant permission to operate said wells 1 and 2; and it further appearing

"That the subdivision of said 2½-acre tract of land and its being set apart to the McGrede heirs was the result of a forced partition in a court of competent jurisdiction and was not a voluntary subdivision for the purpose of circumventing Rule 37; and it further appearing

"That the testimony of two qualified petroleum engineers, to-wit: Gordon Griffin and J. S. Hudnall, before the Railroad Commission of Texas on this application was to the effect that the drilling and operation of said wells 1 and 2 on said tract would not cause waste but would tend to prevent waste and that if said two wells were drilled and operated, oil would be recovered which would otherwise not be recovered, the testimony of these two witnesses being in accord with the previous findings of the Commission based upon numerous hearings and investigations that the closer the wells are drilled, the greater will be the recovery from the area so drilled; and it further appearing

"That it is necessary for well No. 2 on said 2½-acre tract to be drilled and operated in order to prevent drainage of oil from beneath said tract by well No. 8 of the Humack Oil Company; and it further appearing

"That it is necessary to drill said wells 1 and 2 and produce oil therefrom in order to enable applicant to have an opportunity to recover the oil from beneath said lease, to prevent waste, and to prevent the confiscation of applicant's property; and

"It further appearing from the uncontradicted evidence that if said wells 1 and 2 are permitted to be produced, said wells will have to be produced for not less than 7 or 8 years in order to enable applicant to recover the estimated recoverable oil in place beneath said tract under present proration schedules, and that the production of oil from beneath said tract will not injure the adjacent tracts; and

"It further appearing that the petition shows good cause; that no injustice will be done by the granting of such exceptions and that such exceptions should be granted."

■ The Commission granted the application to reopen and to operate the wells upon the ground of changed conditions, and because of the drilling of 22 additional wells in the immediate area since the two wells in question were originally granted. This action is not attacked and is in accord with the decision of the Supreme Court in the New Process case, Magnolia Petroleum Co. v. New Process Production Co., 129 Tex. 617, 104 S.W.2d 1106, 1111, wherein the court say:

"If conditions change, rights change, and the governing statutes place the matter of ascertaining such rights and determining the facts relating thereto in the first instance under the jurisdiction of the Railroad Commission."

The appeal otherwise presents nothing new nor novel. That is, appellants attack the permits upon the usual grounds raised in numerous Rule 37 cases which have come before this court, as follows:

1. That the judgment decreeing a partition of the 2½-acre tract from the larger 41–acre tract in 1934, constituted a voluntary subdivision by the owners of the larger tract which was capable of being developed as a whole without an exception to Rule 37; and that the granting of the permits to prevent confiscation was, therefore, in violation of the Rule 37 applicable.

2. That the wells were not necessary to prevent waste.

■ We regard the question of voluntary subdivision as having been finally adjudicated in the last above cited case (Turnbow et al. v. Barnsdall Oil Co., 99 S. W.2d 1096), and it need not be further

noticed here. The fact, however, that there was a voluntary subdivision of the tract of land in question is no impediment to the granting of the wells to prevent waste. Such is the holding in the recent case of Gulf Land Company v. Atlantic Refining Company, Tex.Sup., 131 S.W.2d 73, 83, wherein the court say:

"As we interpret Rule 37 and the Rule of May 29, the fact that a tract of land is a subdivision within the meaning of the rule last mentioned is no impediment to the granting of a well permit thereon as an exception under Rule 37 to prevent waste. In other words, the rule pertaining to subdivisions has no application to well permits granted to prevent waste."

■ The evidence adduced by appellants showed that there was substantial evidence to sustain the permits to reopen and to operate the two wells in order to prevent waste of oil. The Commission held four hearings with respect to the two wells in question,—two hearings with respect to the permits passed on in the first two cases above cited, and two hearings on the application to reopen and to operate the wells on the ground of changed conditions. On the last hearing, September 23, 1937, appellants requested and the Commission considered all the records and evidence before it on the three previous hearings, and also received much evidence on both the issue of confiscation and the issue of waste. In the trial court appellants introduced a complete transcript of all proceedings and evidence had and adduced on the four hearings before the Commission, and also introduced the testimony of two expert geologists, which on the whole was merely contradictory of or in conflict with the testimony of the two expert geologists who testified on the last two hearings before the Commission. The foregoing presents a statement of facts here of 822 pages, most of which is not material. At the conclusion of appellants' testimony the trial court, trying the case without a jury, sustained the motion of appellees for judgment.

Briefly, the geologists referred to in the Commission's findings of fact testified that the operation of the two wells would prevent.waste of oil because it would shorten the drainage area of the wells; that the two wells would ultimately increase the total recovery of oil from the tract of land in question and from the entire field; and one of them testified that there would be recovered a minimum of from 25,000 to 30,000 barrels by the operation of the two wells, which would not be recovered by any other well, but would be left in the ground and lost. Both of these geologists testified that if the 2½-acre tract be regarded as a part of the 41-acre tract from which it was subdivided, that the two wells would cause recovery from the 41-acre tract of the additional oil as stated.

■ The foregoing evidence presents a case on all fours with the case of Humble Oil & Refining Company v. Railroad Commission et al., Tex.Civ.App., 112 S.W.2d 222 (writ dismissed). In that case a 3-acre tract was partitioned by court decree from a 100-acre tract. The Commission granted permits to drill two wells on the 3-acre tract. A geologist testified that if the second well on the tract were not drilled, there would be left in the ground beneath the tract more than 34,000 barrels which would never be recovered by the owners, nor by any other lease owner.

The above facts also bring the instant case squarely within the definition of waste as defined in the case of Gulf Land Company v. Atlantic Refining Company, supra, wherein the Supreme Court say:

"The term 'waste,' as used in oil and gas Rule 37, undoubtedly means the ultimate loss of oil. If a substantial amount of oil will be saved by the drilling of a well that otherwise would ultimately be lost, the permit to drill such well may be justified under one of the exceptions provided in Rule 37 to prevent waste. We will deal further with this question later in this opinion."

The later discussion of the term "waste" did not modify in any way the quoted definition of it, but merely held that the Commission could not be compelled to grant a permit to drill a well on the lone question of whether such well would save oil that otherwise would be lost, and that "the Commission should be left reasonably free to exercise its sound judgment and discretion" in the matter. That has been done in the instant case.

The judgment of the trial court is affirmed.

Affirmed.