**WOOD et al. v. GULF OIL CORPORATION.**

No. 3768.

Court of Civil Appeals of Texas. Beaumont.

Jan. 30, 1941.

Rehearing Denied Feb. 12, 1941.

Gerald C. Mann, Atty. Gen., Jas. P. Hart, D. D. Mahon, and Edgar W. Cale, Asst. Attys. Gen., Pollard & Lawrence and William S. Reeves, all of Tyler, for appellants.

Stanley Hornsby, of Austin, and Joe S. Brown, of Houston, for appellee.

WALKER, Chief Justice.

A Rule 37 case; for a statement of this rule see Gulf Land Co. et al. v. Atlantic Ref. Co., 134 Tex. 59, 131 S.W.2d 73. The suit was by appellee, Gulf Oil Corporation, against appellants, Fox Wood and "Penn Oil Company" and the Railroad Commission of Texas; the nature and result of the suit is thus stated in the judgment:

"It is therefore ordered, adjudged and decreed on this 7th day of March, 1940, that

the order of the Railroad Commission of Texas entered in Rule 37 case No. 27691, dated December 17, 1938, granting to Fox Wood and 'Penn Oil Company' a permit to drill and produce a well to be known as well No. 6 on the Lillie B. Morse 5.25 acre lease in the R. W. Smith Survey in Rusk County, Texas, and approving the location of said well, and the further order of the Railroad Commission of Texas entered in Rule 37 Case No. 27691, dated February 14, 1939, reaffirming the said order of December 17, 1938, for such well No. 6, at a location described in each of said orders of the Railroad Commission as follows:

"128 feet south of the north line;

"128 feet east of the easterly west line, be, and each of said orders is hereby, annulled, cancelled, and set aside, and adjudged to be wholly null and void, and judgment is hereby rendered denying the permit to drill said well No. 6."

The appeal was prosecuted to the Austin Court of Civil Appeals, and is on the docket of this court by order of transfer by the Supreme Court.

We take the following statement from appellee's brief:

"On December 17, 1938, the Commission granted an exception to its spacing rules governing the East Texas Field to Fox Wood and Penn Oil Corporation to drill well No. 6 on a recited 'about 7 acres' in R. W. Smith Survey in Rusk County, Texas. By order dated February 14, 1939, the Commission reaffirmed this permit for well No. 6 on '5.25' acres.

"It was agreed that each well in the area under discussion is permitted to produce, under the allowable orders of the Commission, twenty barrels per day.

"It is undisputed that the Woodbine sand, from which the oil is being produced, is a continuous bed of oil producing sand known as a 'blanket' sand, and is entirely pressure connected, which creates a common pool.

"The undisputed evidence before the Railroad Commission showed that Fox Wood with five wells on his 5.25-acre tract had a density of a well to each 1.05 acres, whereas the eight times rectangular area surrounding such tract had a density of a well to each 1.70 acres, and the circular eight times area surrounding such tract had a density of a well to each 1.65 acres. This density advantage is also shown by the figures indicated on the plat appearing in the brief of the Railroad Commission of Texas. The memorandum of the Examiner who conducted for the Commission the hearing upon the application of well No. 6 states in part as follows:

" 'Protestants submit a density statement showing that applicant is now at a density advantage under any of the usual methods of density comparison considered by the Commission.'

"The density advantage of the Fox Wood tract under all the usual methods of comparison is further disclosed by the statements attached to the surveyed plat introduced in evidence by appellee.

"Appellant's witness Griffin further testified as follows:

" 'Q. Let's get straightened out about the drainage to and from the Fox Wood tract, in your opinion. Would the wells as now located and drilled on the Fox Wood tract, what is your conclusion as to whether or not more oil is being drained from the Fox Wood tract than the Fox Wood is draining from the other tracts, and in answering that question I ask you to take into consideration the entire Fox Wood tract, including the one acre to the—lying in the Cooper Survey, and the portion of the Nantz tract which lies to west of the area you have been discussing. A. In a case of that sort, I believe that the Fox Wood would have an advantage in drainage.'

"Such witness Griffin further testified as follows:

" 'Q. And it is true that with the five wells they have a drainage advantage, and an advantage in opportunity to produce? A. Let me check that just a minute, I would say they had a slight advantage.'

"Appellant's own witness, Griffin, further testified as follows:

" 'Q. To sum this up and shorten it, it is your testimony, as I understand it, that with the consideration of the Fox Wood tract, as it is shown on plaintiff's exhibit No. 68, that with the five wells now drilled, and producing thereon, it has an equal opportunity with the adjacent leases, and that during its producing life there will be produced more than the amount of recoverable oil underlying it? A. That is true. That would be true, due to its structural position, as it would be in other instances in that area.'

"Mr. Parker testified that there had been approximately 219,000 barrels of recover-

able oil originally in place beneath the Fox Wood tract; and that based upon the Comptroller's figures of production the Fox Wood wells had already produced within 18,960 barrels of the amount of recoverable oil originally in place, and that the wells would continue to produce for 10 or 15 years longer.

"The undisputed evidence further discloses that the tracts adjacent to the Fox Wood tract, even including the wells in litigation, are permitted to produce under the Commission's rules at the rate of 6.8 barrels per acre per day, whereas the Fox Wood tract with 5 wells is permitted to produce 21.2 barrels per acre per day.

"It was further undisputed that there was approximately the same amount of recoverable oil originally in place per acre underlying the Fox Wood tract and equal sized areas of the adjacent tracts surrounding it; and likewise the amount of recoverable oil per acre at the present time under each acre of such areas is approximately the same."

We make the following additional statement:

(1) The permit was granted "to prevent confiscation of property," and on no other ground.

(2) In its brief the Railroad Commission says that the permit "was not granted solely as an offset to any particular well, but rather that the permit location here contested was situated in the center of a very densely drilled area * * *. It merely happens to be a coincidence that in the area surrounding the Fox Wood lease, there are eight producing oil wells whose permits to drill and produce are under attack in a court of competent jurisdiction."

(3) Of the eight permits granted to drill wells in the area surrounding well No. 6, now "under attack in a court of competent jurisdiction," two have been cancelled. Allen v. Gulf Oil Corporation, Tex.Civ. App., 139 S.W.2d 207; Gulf Oil Corporation v. James T. Smith, Tex.Civ.App.., 145 S.W.2d 280.

■ The undisputed facts do not support the issue of "confiscation," the only ground upon which the permit was granted. The test of this issue is whether the owner with the wells he already had "has been given a fair and equal opportunity with other producers on surrounding tracts within the drainage area to recover his fair share of the oil in place beneath his tract. If he has, no confiscation results." Ward Oil Corp. v. Overton Ref. Co., Tex.Civ. App., 139 S.W.2d 292, 293. This rule was also clearly announced by the Supreme Court in Gulf Land Co. v. Atlantic Ref. Co., supra. The well potential and daily allowables for wells surrounding the well in issue were substantially the same. With five wells in operation, the density of Fox Wood and Penn Oil Company was greater than the eight times surrounding area, whether delineated by a square or circle. Its recovery of oil per day per acre under the allowables was greater, much greater, than that of the surrounding drainage area delineated by a square or circle; well No. 6 would materially increase this disparity.

■ General American Oil Co. of Texas v. Gulf Oil Corp., Tex.Civ.App., 139 S.W. 2d 314, supports appellee's counter proposition: "Where the validity of a Rule 37 permit is already under attack in a court of competent jurisdiction, the Commission may not properly ignore the jurisdiction of the court and consider the permit then under attack as the basis for granting additional permits."

If the eight wells under attack are not taken into consideration on the issue of "confiscation," then the disparity in favor of appellant would be greatly increased.

■ As we understand the law and the facts, the Railroad Commission abused its discretion in granting appellants a permit to drill well No. 6, for which reason the judgment of the lower court cancelling this permit should be affirmed, and it is accordingly so ordered.

Affirmed.