## STANTEX PETROLEUM CO. v. GULF OIL CORPORATION et al.

### No. 3926.

Court of Civil Appeals of Texas. Beaumont.
Nov. 19, 1941.

Rehearing Denied Dec. 10, 1941.

Pollard, Lawrence, & Reeves, of Tyler, and Gerald C. Mann, Atty. Gen., and Jas. P. Hart, Asst. Atty. Gen., for appellant.

John E. Green, Jr., and Joe S. Brown, both of Houston, and Hornsby & Hornsby, of Austin, for appellees.

WALKER, Chief Justice.

This is a Rule 37 case; see Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73, for statement of the rule.

"To prevent confiscation of property," on the 23rd day of November, 1937, the Railroad Commission granted to appellant, Stantex Petroleum Company, a permit to drill a seventh well on its 11.26 acre lease in the fairway of the East Texas oil field. Under provisions of Sec. 8 of Art. 6049c. Vernon's Ann.Civ.St., appellee, as plaintiff, instituted this suit against appellant and the Railroad Commission to cancel the permit and to enjoin the drilling of the well and the production of oil therefrom. Navarro Oil Company intervened as a party plaintiff. On trial to a jury, the following judgment was entered on an instructed verdict in favor of appellee and intervenor as against appellant:

"It is therefore ordered, adjudged, and decreed, on this 13th day of February, A. D. 1941, that the order of the Railroad Commission of Texas, dated the 23rd day of November, 1937, and granting to the Stantex Petroleum Company a permit to drill a well to be known as well No. 7 upon the Stantex Petroleum Company's 11.26 acre, Lillie B. Morse lease, in the R. W. Smith Survey, in Rusk County, Texas, at a location described in said order of the Railroad Commission as follows: '143 feet north of the south line, 230 feet east of the west line', is hereby annulled, cancelled, and set aside, and is adjudged to be wholly null and void; and the defendant, Stantex Petroleum Company is hereby denied a permit to drill, operate, or produce, either oil or gas from the said well No. 7 on such 11.26 acre L. B. Morse tract."

Judgment was also entered granting appellee and intervenor the injunctive relief prayed for. Appellant prosecuted its appeal to the Austin Court of Civil Appeals; the Railroad Commission did not perfect its appeal. The case is on our docket by order of transfer by the Supreme Court.

Appellant filed the following plea of estoppel: "That prior to the filing of this suit, this defendant, acting upon the rights granted to it under an order of the Railroad Commission of Texas, made and entered into contracts for the drilling of said well No. 7 and obligated himself by virtue of such contracts, to pay out and expend the sum of approximately Fifteen Thousand Dollars ($15,000.00) without objection on the part of the Plaintiff, which stood by and permitted the Defendant to so contract and obligate himself, as aforesaid, by reason of which the said Plaintiff is estopped to complain of the acts and actions of the

Defendant in the drilling and completion of said well No. 7."

Appellant's first point is that the court erred in sustaining against its plea of estoppel the following exception: "(1) Plaintiff and intervenor specially except to paragraph 3 of such answer of the defendant, Stantex Petroleum Company, because such allegations are wholly immaterial and irrelevant to any issue in this case, as it is not alleged that the matters set out occurred prior to the time that the Railroad Commission acted in granting the permit here under attack, to-wit, November 23, 1937, and being prejudicial, should be striken. Of which special exception, plaintiff prays judgment of the court."

Appellant's plea of estoppel was subject to appellee's exception. On hearing before the Commission, appellee protested the granting of the permit, and filed its original petition in the district court of Travis county, contesting the permit, on December 6, 1937, thirteen days after the permit was granted. In its plea of estoppel, appellant did not allege that appellee had delayed an unreasonable time, after the permit was granted, to file its contest; nor that it misrepresented or concealed the fact from appellant that it intended to file the contest; nor that appellee knew or ought to have known that appellant was contemplating making the contract alleged in its plea of estoppel, nor that it did anything inducing appellant to make the contract; nor did appellant allege that it did not foresee, or should not have foreseen, that appellant would attack the validity of its permit. On authority of the following cases, the plea of estoppel was fatally defective: Commonwealth Bonding & Casualty Ins. Co. v. Meeks, Tex.Civ.App., 187 S.W. 681, 684; Foster v. Spearman Equity Exchange, Tex.Civ.App., 266 S.W. 583, 588; Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73, 78; Stanolind Oil & Gas Co. v. Midas Oil Co., Tex.Civ.App., 123 S.W.2d 911, 913; Stanolind Oil & Gas Co. v. Midas Oil Co., Tex.Civ.App., 143 S.W. 2d 138; 2 Tex.Jur. 1229; 17 Tex.Jur. 137; 17 Tex.Jur. 146–148.

In support of its plea of estoppel, appellant cites and reviews at length Stanolind Oil & Gas Co. v. Midas Oil Co., Tex. Civ.App., 123 S.W.2d 911. In that case, the court propounded the following question, which it answered in the negative: "Can the Stanolind, whose primary interest and objective in bringing such suit is to protect its own property rights, sit silently by for four months after such permit is granted, apparently acquiescing in its presumed validity, until the holder thereof has, as he had a clear legal right to do, incurred heavy expense towards drilling such well, and then be permitted to assert that drilling it will injure Stanolind's property rights?" [143 S.W.2d 140.]

This question is not pertinent to the facts of the case at bar. In the Midas case, the contestant waited four months after the granting of the permit to file its contest; in the case at bar appellee waited only thirteen days. In the case at bar, appellee contested the permit before the Railroad Commission, and appellant alleged no facts and offered no proof raising or suggesting the issue that appellee had abandoned its contest, or would not file a suit to cancel the permit. In the Midas case, the court announced the following proposition pertinent to the issue of estoppel:

"What constituted a reasonable time, none being fixed by statute, in which a protestant must act in suing to set aside such permit; and whether an unreasonable delay in doing so has damaged the holder of such a permit, are fact questions to be determined under all the facts and circumstances of the particular case."

It is our conclusion, on the facts before us, that thirteen days was not an unreasonable delay on the part of appellee in instituting its suit.

Appellant's second point is that the evidence before the court on the trial of this case raised the issue that the permit in issue was necessary to prevent the confiscation of its property.

■ The basis of the application for the permit in issue is reflected by the following memorandum of the Commission's examiner:

"Well No. 7 is requested as a compensating east offset of J. T. Smith No. 3 Morse which is now pending. That well has not yet been granted, and unless it is granted, there would be no need for the location here applied for.

"Contestants contend that even if the Smith well is granted there would be no justification for an additional well on this lease. The average density of the offsetting leases is a well to each 3.14 acres; the density of a rectangular eight times area is a well to each 3.13 acres; and the density

of a circular eight times area is 1.97 acres per well. The density of applicant's lease is now a well to each 1.88 acres, which is below the density of any density comparison made."

The permit for the Smith well referred to in the examiner's memorandum was granted by the Commission but was held invalid by the courts. Gulf Oil Corporation v. Smith et al., Tex.Civ.App., 145 S.W.2d 280. The W. L. Allen well No. 3, the west offset of the Smith well was also held invalid. Allen v. Gulf Oil Corp., Tex.Civ.App., 139 S.W.2d 207. These two wells are therefore without evidentiary weight on the issue of confiscation. Wood v. Gulf Oil Corp., Tex.Civ.App., 147 S.W.2d 818.

We make the following summary of the evidence from the statement made by appellee in its brief, in no way contested by appellants:

It was agreed that each of the wells shown within any of the eight times areas surrounding the Stantex tract was permitted to produce twenty barrels per day. The potentials of the wells in the area were shown to be substantially the same. The permeability, porosity, and saturation in the oil sand underlying the Stantex tract and the eight times areas were shown to be uniform. The undisputed evidence disclosed that with six wells Stantex had a density of one well to 1.88 acres, and with seven wells would have a density of one well to 1.61 acres; that the density of the eight times circular area, disregarding the two wells whose permits had been cancelled, was one well to two acres; the density of the eight times rectangular area was one well to 3.23 acres, and the density of the eight times equidistant area was one well to 2.43 acres.

Mr. Parker testified that, with six wells, drainage was to the Stantex tract, and that the seventh well would increase the advantage Stantex had over the surrounding leases and surrounding areas, and that it would drain oil from the Gulf tract; and that more oil was being drained to the Stantex lease each day with six wells than was being drained from it each day by the wells on the adjacent leases.

Mr. Hudnall, appellant's own witness, testified as follows:

"Q. Mr. Hudnall, you have testified in reply to Mr. Lawrence's questions with respect to the effective drainage, the location of wells, and in other instances the drainage advantage due to a density advantage. Now, in your opinion, when we are comparing actual drainage to and from a lease, which has the most effect, the density where the wells are producing equally as they have been shown to be in this case, or merely the location of the wells? A. Well, generally speaking, the density is more important.

"Q. It is your opinion, under the conditions which we have here, controlling, is it not, Mr. Hudnall? A. I think that it— when you are considering the entire lease and the area around it, that the density is more important.

"Q. You have made a sufficient study of this area, have you not, to be able to examine plaintiff's exhibit No. 3 and to testify at this time with the wells drilled and producing on the Stantex tract, with six wells as of November, 1937, and the areas which Mr. Parker compared on the adjacent leases, as to whether or not more oil is being drawn each producing day to the Stan-Tex tract with six wells than is being drained from it by wells on adjacent tracts? A. I think that it is producing more oil per acre per day than is being produced from the adjacent areas.

"Q. That means, does it not, Mr. Hudnall, that more oil is being drawn to the Stan-Tex tract with six wells from the areas which you have testified are fair to be compared than is being drawn from the Stan-Tex tract by the wells on those areas which you say it is proper to compare? A. There probably is, in actual drainage. If you compared them on the basis of the relative reserves under each lease, it might be a different picture.

"Q. All right, Mr. Hudnall, let's get down to the matter of the relative reserves now. Your testimony was that some of the wells on the Stan-Tex tract struck the top of the producing horizon at a higher level than some of the wells on the adjacent tracts. You further testified that that could indicate one or two things, either that the sand was thicker at that point or that the whole structure had risen likewise, and if the second premise be correct, there is no more oil under the Stan-Tex tract than under the adjacent tracts, is there? A. That is true, if the second is true.

"Q. Which of the wells in the area shown on plaintiff's exhibit No. 3 have been drilled clear through the formation, Mr. Hudnall, so that it is possible for you to determine which of the premises is correct? A. I don't believe that any of the

wells have been drilled entirely through. I don't recall having checked it specifically for that, but I don't believe they have been.

"Q. So that it is not possible for you or any other petroleum engineer to definitely and positively testify that this second premise where the bottom of the horizon has risen the same distance as the top of the horizon, is not correct, and that there would be the same amount of sand and oil and gas underlying the Stan-Tex tract as on the adjacent areas? A. No, you can't say positively that there is."

Mr. Hudnall further admitted that the six wells on the Stantex tract were draining oil from both the Gulf and Navarro leases, and that the Well No. 7 would increase that drainage.

 It is our conclusion on the undisputed evidence that, without the additional well asked for under the permit in issue, as an exception to Rule No. 37, appellant has a fair and equal opportunity with the other producers on surrounding tracts within the drainage area to recover its fair share of oil in place beneath its tract. On this conclusion, it follows that the evidence did not raise in appellant's favor the issue of confiscation. Edgar v. Stanolind Oil & Gas Co., Tex.Civ.App., 90 S.W.2d 656; Gulf Land Co. v. Atlantic Refining Co. et al., 134 Tex. 59, 131 S.W.2d 73; Railroad Commission et al. v. Gulf Production Co., 134 Tex. 122, 132 S.W.2d 254; Ward Oil Corp. v. Overton Refining Co., Tex.Civ.App., 139 S.W.2d 292; Wood v. Gulf Oil Corp., Tex.Civ.App., 147 S.W.2d 818; Railroad Commission v. Arkansas Fuel Oil Co., Tex.Civ.App., 148 S.W.2d 895.

Shell Oil Co. v. Railroad Commission, Tex.Civ.App., 133 S.W.2d 791, cited by appellant, does not support its criticism of the eight times area rule. In that case the tract in issue contained 30 acres, and the eight times area contained 240 acres. The opinion intimated that where the tract is small, as in the case at bar, the eight times area rule is reasonably accurate. The court based its distinction, taking the case out of the eight times area rule, on its conclusion that the outstanding wells in the eight times area around the 30 acres were too far away to exert any drainage influence. In the case at bar, as against the court's distinction in appellant's cited case, it was shown by its own witness, Mr. Hudnall, that there was more drainage to appellant's tract than from it by the wells on the adjacent tracts. The Austin Court of Civil Appeals, in Cook Drilling Co. et al. v. Gulf Oil Corp., Tex.Civ.App., 155 S.W.2d 638, held that no confiscation was shown where the applicant was extracting more oil per day from its lease within the eight times area, whether rectangular or circular, than the average produced by the other operators in this area.

 We overrule appellant's contention that it is entitled to the permit for the reason that some of the operators on the adjacent tracts have been given a density greater than the density given it under its operating permits. That an operator in the eight times area has been given an unfair advantage does not support appellant's application, on the undisputed evidence that it is producing, within the eight times area, its fair share of the oil in place beneath its tract. Empire Gas & Fuel Co. v. Railroad Commission, Tex.Civ.App., 94 S.W.2d 1240.

The judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.