**LIPPINCOTT et al. v. ATLANTIC REFINING CO.**

No. 8875.

Court of Civil Appeals of Texas. Austin.

May 3, 1939.

Motions for Rehearing Overruled
May 24, 1939.

Earl Roberts and H. P. Smead, both of Longview, for appellant Ben Lippincott.

Gerald C. Mann, Atty. Gen., and James P. Hart, Asst. Atty. Gen., for appellant Railroad Commission of Texas.

A. E. Groff and R. H. Whilden, both of Houston, and Greenwood, Moody & Robertson, of Austin, for appellee Shell Petroleum Corporation.

C. B. Ellard, of Dallas, and Black, Graves & Stayton, of Austin, for appellee Atlantic Refining Co

BAUGH, Justice.

This is a rule 37 case. On April 5, 1938, the Railroad Commission granted Lippincott a permit to drill a second well on a 1.27-acre tract of land in the "fairway" of the East Texas field in Rusk County, as an exception to rule 37, "to prevent confiscation of property," over the protest of the Atlantic Refining Company, owner of an adjoining lease. The Atlantic thereupon filed this suit to set aside said permit, and to enjoin production from the well, which had been drilled. The Shell Petroleum Corporation intervened. Trial was to the court without a jury and the relief granted as prayed for. Lippincott and the Railroad Commission have appealed. At the request of appellants, the trial court filed extensive findings of fact and conclusions of law.

No new questions are presented on this appeal. Beginning with the case of Railroad Commission v. Bass, 10 S.W.2d 586, decided June 27, 1928, this court has written opinions in 71 cases, involving the interpretation and application of rule 37 of the Railroad Commission, and the numerous changes and amendments thereto. No useful purpose would be served in citing or reviewing them here. Suffice it to say that since the cases decided in December, 1933, and January, 1934, reported in 68 S.W.2d 609–628; Sun Oil Co. v. Railroad Commission, 68 S.W.2d 609; Humble Oil & Refining Co. v. Railroad Commission, 68 S.W.2d 622; Id., 68 S.W.2d 625; Smith v. Stewart, 68 S.W.2d 627, relating to voluntary subdivisions of small tracts from larger tracts or leaseholds, capable of development as a whole without the necessity of an exception to rule 37, so as to necessitate an exception to such rule to develop such small tracts, the law has become well settled on that question. Pursuant to the rules announced in those cases, the Railroad Commission on May 29, 1934, amended its cardinal spacing rule so as to provide, in effect, that such voluntary subdivisions would not be considered by it as a ground for an exception to such rule to prevent confiscation of property.

The rule requires not only stated distances between wells on the same tract, but where diversity of ownership obtains as between different tracts, minimum spacing of wells from property lines are prescribed. This for the manifest reason that the adjacent owner, in order to protect his property from confiscation or from drainage by the well of his neighbor, must so locate a well on his own land as to counteract that drainage. It becomes obvious, therefore, that to permit the drilling of wells in immediate prox-

imity to property lines, contrary to the spacing provisions of the rule, and so compelling the adjacent owner to do the same to protect his own property, would, so far as conservation of the natural resources is concerned, effectuate a density of drilling in such area as much at variance with the general spacing pattern which the rule is designed to accomplish, as if wells were permitted in close proximity to each other on the same tract. It becomes clear then that as a conservation measure the spacing provisions of the rule requiring setback distances from property lines are as essential to its efficacy, and of as much importance as the spacings between wells within a given tract.

Notwithstanding this, however, in instances where it is clear that the Railroad Commission has granted a permit as an exception to rule 37 on a subdivided tract, on grounds that it was necessary to prevent confiscation as to the small tract alone, considered separate from, and independent of, the larger tract from which it was carved; if the original tract, considered as a unit, without the segregation, were entitled to an additional well to protect it, such permit has by the Supreme Court been sustained, though its location be in flagrant disregard of the setback distance from property lines prescribed by the rule. Railroad Commission of Texas v. Magnolia Petroleum Co., (Century case), Tex.Sup., 109 S.W.2d 967.

The tract here involved contained 1.27 acres, the boundary lines forming a right angle triangle, the north leg being 365 feet long, and the west leg 418 feet long. It adjoins on the north a 20-acre tract, capable of development without exception to rule 37, from which it was voluntarily segregated after rule 37 became applicable to this area. The history of this tract, according to the trial court's findings, and the undisputed evidence is as follows:

The first application for a permit on this tract was made in 1932. It was refused in June, 1932, on the grounds that the tract was voluntarily subdivided from the larger tract. A second application was made in December, 1932, which was refused for a like reason in January, 1933. In January or February, 1933, the operator of said tract drilled a well thereon without a permit, and thereafter paid a $500 fine for doing so. Application for a second well thereon was made in October, 1934, and was denied. Shortly thereafter another application was made and denied, the applicant filed suit in

the Federal Court to enjoin the Commission from interfering with the drilling of a second well, the Federal Court denied the injunction and made findings of fact that this tract already had, with one well thereon, a drainage advantage over the surrounding tracts, and that the drilling of such an additional well would cause physical waste.

The trial court herein found that the surrounding conditions were the same on the date of the hearing on the permit here involved and on the date it was granted as they were when former applications were refused by the Commission and when the judgment was rendered by the Federal District Court, except that one additional well had been drilled in this area; but that it was located such a distance from this tract as not to affect either density or drainage. The evidence further showed that taking this tract as a unit it was more densely drilled and recovering more oil per acre, than eight times the surrounding area, delineated either by a circle with its one well as the center, or by triangulation of similarly sized tracts. And further that if considered as a part of the 20 acres from which it was segregated, the combined 21.-27-acre tract was more densely drilled than the eight times surrounding area of that tract, however delineated. It is not controverted that the sand thickness, underground conditions, and well allowables in this area were substantially the same. Manifestly no confiscation was shown.

On the question of physical waste, which the record discloses was not considered in support of the application, not only do the four refusals by the Commission to grant permits thereon constitute an implied finding that waste would not result without the additional well; but the Federal District Court found that a second well on said tract would cause physical waste; the trial court herein found that no material change of conditions had occurred since the judgment was rendered by the Federal District Court; and further that physical waste would result if the well herein authorized were permitted to produce.

The grounds urged to sustain the permit, in the main, were as follows:

1. Testimony of one witness that the spacings provided in rule 37 were too great and should be much less; and that to prevent physical waste the entire East Texas field should be drilled to a pattern of one well to each 3/4-acre. This, manifestly,

was a collateral attack on the rule itself and affords no basis for an exception to it.

2. That the extreme parts of the triangular tract were being drained by wells on surrounding tracts. It was indisputably shown, however, that this drainage from said tract was being compensated by drainage from other directions and other lands to the one well already drilled thereon.

3. That the well already drilled thereon had prematurely produced a water flow. It does not appear whether or not this was due to drilling too far into the producing sand and so permitting the rising water table to thus sooner reach the bottom of the well. The evidence clearly showed in this regard, however, that an already excessive density of drilling in this area, all wells being operated on approximately the same allowable, had hastened the intrusion of water into this area; and that the drilling of still another well on said tract would aggravate that condition; and the trial court so found.

We have not undertaken to discuss all the contentions made, both by appellants and appellee, but it is clear from the foregoing that said permit cannot be sustained on the ground that it was necessary either to prevent confiscation or to prevent waste. The judgment of the trial court is, therefore, affirmed.

Affirmed.