## COOK DRILLING CO. et al. v. GULF OIL CORPORATION.

### No. 9126.

Court of Civil Appeals of Texas. Austin.

Oct. 1, 1941.

Rehearing Denied Oct. 22, 1941.

Dissenting Opinion Nov. 7, 1941.

Saye & Saye, of Longview, for appellant Cook Drilling Co.

Gerald C. Mann, Atty Gen., and Edgar W. Cale, Asst. Atty. Gen., for appellant Railroad Commission of Texas.

Joe S. Brown, of Houston, and Stanley Hornsby, of Austin, for appellee, Gulf Oil Corporation.

BAUGH, Justice.

This is a Rule 37 case. Appeal is by the Railroad Commission and the permittee from a judgment of the District Court setting aside a permit granted by the Commission to Cook Drilling Company to drill an eleventh well near the northwest corner of its 45-acre lease in Rusk County. The tract in question runs north and south, is 870 feet wide, its west boundary 2570 feet long and its east boundary 1901 feet long. The well involved was authorized to be drilled under an exception to Rule 37, in the northwest corner of this tract, 150 feet from its west line, 220 feet from its north line, and 223 feet northwest of a producing well on said tract. It was granted on the recited grounds to prevent confiscation and to prevent waste.

We find no new questions presented on this appeal. The first contention made by the Attorney General on behalf of the Railroad Commission is that appellee did not show that it had a justiciable interest in the controversy. Such suits are authorized under Sec. 8, Art. 6049c, Vernon's Texas Civil Statutes, to be brought by "any interested person affected by" the order attacked. From the above statement as to the location of said well, under the Commission's own spacings of 330-660 feet, which imply a finding that a well will, under ordinary conditions, drain oil 330 feet from its bore, it is manifest that the well in question was within drainage distance of appellee's lease both to the west and to the north. That being true, appellee was, under numerous holdings of this court, an interested party within the meaning of the statute. See Railroad Comm. v. Gulf Production Co., Tex.Civ.App., 115 S.W. 2d 505, 508, affirmed by Supreme Court

in 134 Tex. 122, 132 S.W.2d 254; Railroad Comm. v. Humble Oil & Ref. Co., Tex.Civ.App., 119 S.W.2d 728, 730, writ refused, and cases therein cited.

The chief question presented is whether there was substantial evidence before the Commission at the hearing upon the application to sustain such order either on the ground of confiscation or on that of waste prevention.

■ While some confusion has occurred in the past as to the method and extent of the inquiry on the trial of cases involving orders of the Commission, this has been largely removed by the decisions of the Supreme Court in Lone Star Gas Co. v. State, 153 S.W.2d 681, and Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73. Granting or refusing a permit for an oil well is not a general order, legislative in character, and prospective in operation, such as a rate order, or, for that matter, the promulgation of the general Rule 37 itself. The action of the Commission on an application for a permit to drill a well as an exception to Rule 37, is but an administrative act, quasi judicial in character, wherein the Commission must determine whether the facts of the particular case authorize an exception to, or a deviation from, the general spacing distances prescribed by the Rule itself. While it has been stated in opinions of the Supreme Court that such hearings are informal, and not governed by strict rules of procedure observed in trials to a court, it is clearly contemplated that facts should be adduced in such hearing which would meet the requirements of the substantial evidence rule. That is, that there should be at least some compliance with judicial process. As stated by the Supreme Court in Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, 945, 99 A.L.R. 1107, involving the same question here presented, "The decisions of the Railroad Commission on this question must be based upon proof, and must not be capricious or unreasonable. The mere holding of a hearing does not justify its action. If after a hearing the commission acts without regard to the evidence, or makes a ruling wholly unsupported by the evidence, it cannot be said to have exercised its discretion." See, also, Gulf Oil Corp. v. York, Tex.Civ.App., 134 S.W.2d 502, 505.

■ It is now settled that in an application for a permit as an exception to Rule 37, the burden rests upon the applicant to show by substantial evidence before the Commission that he is entitled to it. Railroad Comm. v. Magnolia Petroleum Co., 130 Tex. 484, 109 S.W.2d 967, reaffirmed by the Supreme Court in Gulf Land Co. v. Atlantic Refining Co., supra. After such permit is issued, it is presumed, under the statute and numerous decisions, to be valid and the burden then rests upon the party attacking it to overcome such presumption.

■ The only evidence introduced on the trial hereof was the proceedings before the Commission, the testimony of the examiner who heard the application (who, in the main, merely verified the proceedings had before him), and excerpts from amendments to Rule 37 and from proration orders of the Commission. The question presented, therefore, is whether the appellee, as the trial court found, discharged the burden resting upon it to show that there was no substantial evidence before the Commission to sustain its order. We have concluded that it did and that the trial court's judgment setting aside the permit should be affirmed.

Not only was no confiscation of Cook's property shown in the hearing before the Commission, but it was, we think, negatived. Cook's testimony, and the documentary evidence presented to the Commission showed that with ten wells on the 45-acre tract, under the existing allowable, when compared with the eight times surrounding area, whether delineated by rectangle or circle, Cook was extracting from such tract more oil per acre per day than the average of the surrounding area. The only disparity of density Cook claimed was on small tracts to the southwest; and the wells in this more densely drilled area appear, as shown by the map presented to the Commission, to be too far removed from said tract to drain oil from beneath it; and in the drainage area surrounding the well authorized in the northwest portion of the Cook tract, Cook already enjoyed a drainage advantage over appellee's adjoining tracts without the well in question. The well in question was located, not in the portion of Cook's lease claimed by him as being drained, but on the portion farthest removed

from such area. Cook testified that his application for such permit was based upon the assumption that the underground conditions beneath his and the adjoining tracts were substantially uniform; and the excerpts from the Commission's proration schedule for this area, offered by the Gulf at such hearing, showing the daily allowable per well for the area, so indicates. It must be concluded, therefore, that the underground conditions, well potentials, etc., in the area involved were substantially uniform.

■ No competent evidence whatever on the question of waste was presented to the Commission at the hearing. And when the appellee presented to the Commission evidence that, according to the Commission's own proration schedule and per well allowable the underground conditions in the area involved were substantially uniform, and that fact was made to appear upon the trial, it sufficiently negatived the waste issue as sustaining the order to rebut the prima facie validity of the order on that ground, under the Commission's own fact findings on which Rule 37 is based. The same question was presented to us in Stanolind Oil & Gas Co. v. Midas Oil Co., Tex.Civ.App., 123 S.W.2d 911, 916, writ dismissed, correct judgment, and we there so held.

■ Nor do we construe the decision of the Supreme Court in the Gulf Land Company v. Atlantic Refining Co. case, supra, as holding otherwise. In its brief appellant Cook Drilling Company premises its contention that the permit is sustainable on the ground of waste by the following statement: "In approaching this question we must indulge the presumption that the more wells that are drilled, the greater will be the recovery of oil from any given pool," citing the Atlantic case, supra. We do not construe the Atlantic case as so holding. In that case the opinion was grounded on the proposition that the Commission had not passed upon the waste issue; that even if it be conceded that the "more wells, more oil theory" were correct, it would still not follow that waste would occur as a matter of law; and that bringing to the surface the maximum amount of recoverable oil from beneath the ground was but one of the elements entering the question of waste prevention. Waste above ground must also be considered in regulating production.

On the other hand this same question has been repeatedly considered by this court and overruled. We merely refer to some of these cases without reiterating here our views in this matter. Railroad Comm. v. Marathon Oil Co., Tex.Civ.App., 89 S.W.2d 517, writ refused; Magnolia Petroleum Co. v. Railroad Comm., Tex. Civ.App., 93 S.W.2d 587, writ refused; Railroad Comm. v. Gulf Production Co., Tex.Civ.App., 115 S.W.2d 505, affirmed by the Supreme Court in 134 Tex. 122, 132 S.W.2d 254; Lippincott v. Atlantic Refining Co., Tex.Civ.App., 128 S.W.2d 847, writ dismissed; and Railroad Comm. v. Shell Oil Co., Tex.Civ.App., 154 S.W.2d 507, decided June 25, 1941.

■ We hold, therefore, that no such presumption obtains that wells drilled at closer distances than those prescribed by Rule 37 are necessary to prevent waste as defined by law and the rules of the Commission. To so hold would in effect nullify the Rule itself. On the other hand, unless some grounds for an exception to the spacings prescribed by the Commission in the Rule itself, and recited by the Commission in such Rule as being necessary to prevent physical waste of oil and gas, are shown to exist, the presumption must be indulged that closer drilling, as a general rule, will tend to cause, rather than to prevent, waste. Such has been the consistent holding of the majority of this court since this question was fully considered in Rule 37 cases reported in Sun Oil Co. v. Railroad Comm., Tex.Civ. App., 68 S.W.2d 609; Humble Oil & Refining Co. v. Railroad Comm., Tex.Civ. App., 68 S.W.2d 622; Id., Tex.Civ.App., 68 S.W.2d 625.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

BLAIR, Justice.

I again dissent from the majority view in this, a Rule 37 case. The majority view in the instant case is based upon the construction of special Rule 37 applicable to the East Texas oil field as containing two implied findings of fact by the Railroad Commission.

The first implied finding imposed upon the Rule by the majority is that a well will, under ordinary conditions, drain oil 330 feet from its bore. Manifestly, the Rule

makes no such finding, either expressly or impliedly; such finding, however, is necessary to the majority opinion, because otherwise the appellee who contested the permit would have been compelled to prove how the well injured it. The majority view supplies this proof for it by holding that, "under the Commission's own spacings of 330–660 feet, which imply a finding that a well will, under ordinary conditions, drain oil 330 feet from its bore, it is manifest that the well in question was within drainage distance of appellee's lease both to the west and to the north." Such holding is in direct conflict with the cases of Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73, and Railroad Commission v. Magnolia Petroleum Co., 130 Tex. 484, 109 S.W.2d 967, wherein it is held that the fixing of the spacing distances is not a finding either way as to waste, but that it is a spacing pattern for the orderly development of a field without having to obtain a permit to drill an oil well, except to drill at lesser distances than stated in the Rule.

The second implied finding which the majority attribute to the Rule is that the "presumption must be indulged that closer drilling, as a general rule, will tend to cause, rather than to prevent, waste. Such has been the consistent holding of the majority of this court since this question was fully considered in Rule 37 cases reported in Sun Oil Co. v. Railroad Comm., Tex.Civ.App., 68 S.W.2d 609; Humble Oil & Refining Co. v. Railroad Comm., Tex. Civ.App., 68 S.W.2d 622; Id., Tex.Civ. App., 68 S.W.2d 625."

This is the first time that the majority have frankly admitted that such construction of the Rule is their own. That construction was rejected in both the Gulf Land Company and the Magnolia or Century cases, supra, and other cases, and need not be further discussed here. My opinion regarding such construction is fully set forth in the recent dissenting opinion in the case of Railroad Commission of Texas v. Shell Oil Company, Tex.Civ. App., 154 S.W.2d 507.

By holding that the Rule is an implied finding that wells will drain oil for a distance of 330 feet from the bore, makes it easy for any litigant who cannot show an injury otherwise from the drilling of a well, to come into court and set aside the order of the Commission by merely introducing the Rule in evidence. That is

the holding of the majority. Such holding effectively destroys the Commission and its administration of Rule 37. The appellee in the instant case simply introduced this Rule, a few maps showing the density in the area of the well, and placed on the stand a witness, who stated that this was the only documentary evidence introduced before the Commission; thereafter, the trial court struck down the permit granted by the Railroad Commission, after notice and hearing. The majority holding is that this overcame the prima facie validity given by statute and law to the order of the Railroad Commission. If such can be done, why have a Railroad Commission to administer the conservation laws of Texas. This simply continues the fight that the majority has made against the Commission as to its administrative policies since the early cases reported in Sun Oil Co. v. Railroad Comm., Tex.Civ.App., 68 S.W.2d 609; Humble Oil & Refining Co., v. Railroad Comm., Tex.Civ.App., 68 S.W.2d 622; Id., Tex.Civ.App., 68 S.W.2d 625, cited by the majority as supporting their continued interpretation of the Rule, and which has been rejected by all courts except the majority view.

Considering, however, the evidence introduced by the appellee, itself, in the trial of this case, and upon which it obtained an order of the district court striking down the permit, it clearly shows substantial evidence to support the Commission's order in granting this well, under the previous decisions of the writer of the majority view in this and in other cases.

In the case of Humble Oil & Refining Co. v. Railroad Commission, 99 S.W.2d 401, 402, this court, speaking through Mr. Justice Baugh, state: "We think the Railroad Commission and the trial court were authorized, with the maps before them showing the number and location of wells, to draw their own factual conclusions as to drainage and were not conclusively bound by the expert opinion of the employee of the appellant as to such drainage."

And in Shell Oil Company, Inc., v. Railroad Commission, Tex.Civ.App., 133 S.W. 2d 791, 792, Mr. Justice Baugh, again speaking for this court, held that density maps showing eight times area surrounding a given tract are frequently resorted to in determining the issue of drainage or confiscation in determining whether the leaseholder has had a fair opportunity to recover his share of oil beneath his tract,

"but it manifestly cannot be taken as a conclusive criterion." And it was further pointed out the reasons why such basis of comparison could not be adopted as a conclusive criterion.

One such reason is entirely applicable in the instant case, where it is shown that small tracts within the eight times area and within drainage distance, have more wells per acre than do the adjoining tracts. This is shown by the exhibits introduced by the appellee, itself; from which it appears that the Overton Refining Company's Amanda Green estate lease consisting of four acres has two wells as indicated thereon, further that this lease of four acres immediately joins the Cook Amanda Green lease on the west, and that said lease is drilled to a density in excess of two times as great as that of the applicant's tract. Again examining the McKinney and McKinney lease, which is an adjoining lease to the Cook Drilling Company Amanda Green lease and to the west thereof, being just north of the Overton Refining Company lease, is found a ten-acre tract with three wells thereon having a density of one well to 3.33 acres, said tract being drilled to a density considerably greater than the applicant's tract. Both of these leases and the wells drilled thereon exert a drainage influence upon the applicant's tract, and under the rule of law laid down in the Kingwood case should properly be considered as constituting wells that are draining oil therefrom.

Appellee also introduced Exhibit A, in which he gave the various leases surrounding appellant's lease, the acreage, and the allowable barrels of oil per acre. This shows that the leases within an eight times area had an allowable of 4.14 barrels; whereas, the lessee in question, even if granted the right to drill the well under the permit, had slightly less than one well to 4.09 acres. But these were clearly matters which the Railroad Commission, itself, must determine, and a court cannot substitute itself for the Commission. If the Commission is required to go into detail in the hearing of the applications to drill wells as exceptions to the Rule, which the majority suggest, it would be rendered wholly ineffective because it could not hear even a small portion of the applications presented to it. The Commission under the law must supervise the drilling of every well, whether granted under special exception or drilled without exception, from the time it is started until it is finished; and it then fixes the allowable; it continuously makes bottom hole tests under its continuous supervision; it knows the condition and nature of the field and area wherein the permit is sought; it knows the general condition of the field, its average density, porosity, permeability, and viscosity of the sand; it knows the condition of the water and the reservoir pressure; and in granting a permit to drill an exception it must be presumed that the Commission took all such matters into consideration when it granted the permit. No other rule could be established without doing such injury to the administrative power of the Railroad Commission as to render it nugatory.

I must again respectfully dissent from the majority view of this case.