RAILROAD COMMISSION OF TEXAS et al. v. ROWAN & NICHOLS OIL CO.

No. 9173.

Circuit Court of Appeals, Fifth Circuit.

Nov. 3, 1939.

Gerald C. Mann, Durward D. Mahon and James P. Hart, and Harry S. Pollard, all of Austin, Tex., for appellants.

Dan Moody, of Austin, Tex., and Rice M. Tilley, of Fort Worth, Tex., for appellee.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

This suit was brought by Rowan and Nichols Oil Co., owner of an oil lease in the East Texas Field, hereafter referred to as plaintiff, to enjoin the Railroad Com-

mission of Texas, hereafter referred to as the Commission, its members and the Attorney General of Texas, from enforcing against plaintiff an order issued by the Commission, on August 29, 1938, and subsequent amendments, fixing the amount of crude oil permitted to be produced daily from the East Texas Oil Field, usually referred to as the "allowable", and prorating production as to the wells in the field. The orders fixed the total allowable at about 522,500 barrels a day and restricted each well to daily production of 2.32 per cent of its hourly potential production. Plaintiff did not challenge the authority of the Commission to enter the order nor attack the top daily allowable. The bill alleged the order as interpreted and enforced by the Commission was unreasonable, arbitrary and confiscatory of plaintiff's property, without due process of law, in violation of the 14th Amendment, U.S.C.A.Const. The bill prayed for an interlocutory injunction. By amendment this was waived and the case was tried before the District Judge, sitting alone. There was judgment for plaintiff. D.C., 28 F.Supp. 131. This appeal followed.

The District Court made extensive and comprehensive findings of facts, which were not excepted to. It is unnecessary to review them all. The case may be substantially stated as follows.

The East Texas Oil Field is approximately 40 miles in length from north to south with an average width of 4 miles from east to west. It lies in Upshur, Gregg, Smith and Rusk Counties, and it is of about 133,000 acres in surface extent. It has produced oil continuously since its discovery in October, 1930: The oil is in a continuous, common reservoir about 3600 feet below the surface, contained in what is called the Woodbine sand.

The average depth of the Woodbine sand throughout the field is 42 feet. On a line drawn through the centre of the field from north to south, which is called the fairway, the average depth of the Woodbine sand is about 100 feet. Plaintiff is the owner of an oil lease, known as the Todd B. Lease, covering 24.99 acres in Gregg County. It is located in the fairway. The average depth of oil bearing sand under the lease is 95 feet. It was estimated that at the time of suit the entire recoverable oil in the field was 2,217,980,000 barrels and the recoverable oil under plaintiff's lease was 1,151,168 barrels.

Plaintiff has 5 wells on its lease with a potential capacity of about 20,000 barrels per well per day. Under the order complained of each of its wells is allowed to produce a little over 22 barrels of oil a day, a total of 112 barrels. Orders of the Commission require all wells to be shut down on Saturdays, and Sundays leaving five productive days a week.

Plaintiff made application to the Railroad Commission for permission to drill a number of additional wells on its lease but was granted permission to drill only one. It costs about $10,000 to drill a well in the East Texas Field. The well has not been drilled. As to the enforcement of the order the parties have stipulated as follows:

"In the application and enforcement of the above proration order (a) each well that could not produce as much as 20-barrels of oil per day was allowed to produce the maximum amount that it could produce; (b) where 2.32% of the hourly potential of any well would amount to less than 20-barrels per day, the well was allowed to produce 20-barrels of oil per day; (c) where 2.32% of the hourly potential of any well would amount to more than 20-barrels of oil per day, such well was allowed to produce 2.32% of its hourly potential.

"This application of the order resulted in the following: Approximately 451-wells, not any one of which was capable of producing as much as 20-barrels per day, were allowed to produce daily a total of approximately 5,250-barrels. Approximately 19,032-wells whose individual hourly potential when multiplied by 2.32% amounted to less than 20-barrels, were each allowed to produce a full 20-barrels per day; or from all of such wells a total of approximately 380,640-barrels per day. These were wells whose hourly potential ranged anywhere from 1-barrel to 860-barrels per hour. Approximately 6,325-wells whose individual potential when multiplied by 2.32% amounted to more than 20-barrels were each allowed to produce daily that number of barrels which equalled the product of its hourly potential multiplied by 2.32%. The total daily production from these wells was approximately 136,610-barrels. These wells had an hourly potential ranging from 865-barrels per hour to about 1,100-barrels per hour. In practical operation, the daily allowable of no well was controlled by the factor 2.32% of its hourly potential unless

such well had a potential of 865-barrels or more per hour."

The 451 wells referred to in the stipulation as allowed to produce all they can may properly be classed as marginal wells under the terms of a Texas statute, Art. 6049b, Vernon's Ann.Civ.Stat., which, inter alia, defines a marginal well as any pumping well having a daily output of production of 20 barrels or less. The statute prohibits the Railroad Commission from restricting the production of any marginal well as thereunder defined.

Plaintiff concedes that restriction of production and proration is necessary to prevent waste in the East Texas Field. It makes no point as to the 451 marginal wells. Its principal contention is that allowing all other wells with a potential capacity of not over 20 barrels a day to produce all they can is arbitrary, unjustly discriminatory and confiscatory of its property as any other wells in the field drain the oil from under its lease to some extent. By way of comparison it is pointed out, and the facts were so found by the District Court, that nearby leases are more closely drilled. One of .48 acres has 5 wells which produce at the rate of over 200 barrels per acre per day. Another lease has 15 wells on 2.59 acres, which are allowed to produce 300 barrels per day.

The District Court reached the conclusion that the Commission should have considered as essential factors in allocating the daily allowable the depth of sand under each acre and the estimated amount of oil in place. Judgment was entered enjoining the Commission from enforcing the order and from interfering with plaintiff in the daily production of its fair share of the daily allowable fixed by the Commission, which fair share was fixed at the ratio which 220 barrels bear to 522,000 barrels, basing this upon the recoverable oil under plaintiff's lease and the total amount of recoverable oil in the field. This would allow plaintiff to produce approximately 44 barrels of oil per day from each of its wells, about twice as much as under the order as enforced by the Commission.

■ Under the law of Texas the owner of an oil lease is the owner of the oil in place under the lease. The Commission had authority to regulate the development of the land and production of the oil but must allow the lease owner to produce a fair share of his oil. The find-

ings of facts by the Commission are not conclusive. Its orders must be reasonable and not arbitrary to be valid and any person challenging their legality may resort to the courts for relief. Brown v. Humble Oil Co., 126 Tex. 296, 83 S.W.2d 935, 87 S.W.2d 1069, 99 A.L.R. 1107, 101 A.L.R. 1393; Gulf Land Co. v. Atlantic Ref. Co., Tex.Sup., 131 S.W.2d 73. Necessarily, when rights guaranteed by the Federal Constitution are infringed Federal Courts have jurisdiction. St. Joseph Stock Yards Co. v. U. S., 298 U.S. 38, 56 S.Ct. 720, 80 L.Ed. 1033.

■ Conceding that, as contended by the Commission, the burden to show illegality of the order rested upon plaintiff, we think that burden has been sustained. Under the undisputed facts as shown by the record it is plain that the daily allowable of 522,000 barrels, wells operating on a five day basis, would exhaust the entire field in 16 to 17 years, while plaintiff would be permitted to produce only approximately one-half of the oil it owns, in place under its lease, in the same period, losing the other half entirely from drainage by other wells.

■ There is undisputed evidence tending to show that a pumping well in the field averaging 5 barrel production a day can be operated with some profit, although the cost of installing pumping apparatus would be about $3,500 a well. It follows that a flowing well producing the same quantity of oil could be operated at a larger profit. Flowing wells producing 20 barrels of oil a day or less could not be considered as marginal wells coming within the mandatory terms of the statute. The Commission is without authority to so class them. It would seem that a more equitable order could be drafted by fixing a lower maximum production for the smaller wells and raising the percentage of potential production allowed. But that is a question to be decided by the Commission as to which we express no opinion.

■ The Commission contends that fixing the ratio of production for plaintiff was not within the province of the court. Generally, courts passing upon administrative orders are not authorized to substitute their judgment for that of the authority issuing the order and must content themselves with enjoining the operation of the order as made. However, there are exceptional cases in which equity and justice require a court to temporarily do so.

Newton v. Consolidated Gas Co., 258 U.S. 165, 42 S.Ct. 264, 66 L.Ed. 538. In this case the Commission has no just ground of complaint. The judgment in effect restricts plaintiff to the production of 44 barrels of oil per day per well instead of 22 barrels allowed by the order. If that were not so, plaintiff would be at liberty, with the order enjoined, to produce its full capacity, which would be unfair to other wells in the field still restricted.

We agree with the District Court that in entering an order prorating the amount of oil allowed to be produced from each well, the Commission should take into consideration the amount of oil in place under the lease as well as other relevant factors and should so administer the order as to allow each lease owner to produce his fair share of the oil from the common reservoir. In order to remove any doubt as to the temporary character of the ratio fixed by the District Court, the judgment will be amended to read "without prejudice to the right of the Commission to enter a reasonable proration order and to fairly enforce it."

As so amended the judgment is affirmed.