**RAILROAD COMMISSION OF TEXAS et al. v. CONTINENTAL OIL CO.**

No. 3945.

Court of Civil Appeals of Texas. Beaumont.
Dec. 15, 1941.

Rehearing Denied Dec. 31, 1941.

Gerald C. Mann, Atty. Gen., and Edgar W. Cale, E. R. Simmons, Tom D. Rowell, Jr., James P. Hart, Henry D. Lauderdale, and James D. Smullen, Asst. Attys. Gen., for appellants.

Dan Moody, of Austin, and Burney Braly, John A. Braly, and G. R. Pate, all of Ft. Worth, for appellee.

WALKER, Chief Justice.

Appellee asserts that its right "to produce the quantities of oil daily which it can produce without waste * * * is the subject matter of the suit." The judgment of the court gave to appellee the very right covered by this proposition—the right to produce the quantity of oil daily which it can produce without waste; there was no limitation of quantity under the court's judgment; the judgment gave to appellee the unlimited right to develop its field to the fullest extent possible without waste. Against the court's judgment—and against appellee's proposition—appellants make the following point: "The court erred in holding that under section 6 of article 6049d, the Railroad Commission is required to determine the market demand for the Conoco-Driscoll Field separately and without relation to all fields in the State as distinguished from the market demand for the entire State and then allocating the market demand between the various fields without discrimination."

The Commission's power to restrict the production of oil and gas from any well or field is a limited one. The power may be exercised when reasonably necessary, and only to the extent reasonably necessary, to prevent physical waste or to protect correlative rights. Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, 87 S.W.2d 1069, 99 A.L.R. 1107, 101 A.L.R. 1393; Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S. W.2d 73. This power was limited as follows by the Supreme Court of the United States in Thompson v. Consolidated Gas Utilities Co., 300 U.S. 55, 57 S.Ct. 364, 371, 81 L.Ed. 510: "Proration orders would not be valid if shown to bear no reasonable relation either to the prevention of waste or the protection of correlative rights, or if shown to be otherwise arbitrary."

On no theory of the case can the orders of the Commission in the case at bar be classed as "arbitrary," as distinguished from the issues of "waste" and "confiscation," for the reason that, on appellee's statement, the order was made by the Commission on its formula of proration. The case does not involve an issue of correlative rights, as applied to the Conoco-Driscoll oil field, for the reason that appellee is the sole producer in that field. It follows that the proration orders attacked by appellee, and held void by the lower court, if in fact valid, must rest for their support upon a presumed finding of the Commission that they were promulgated to prevent waste.

Pertinent to the facts of this case, the Legislature has defined waste as follows:

"Article 6014. 'Waste'

"The production, storage or transportation of crude petroleum oil or of natural gas in such manner, in such amount, or under such conditions as to constitute waste is hereby declared to be unlawful and is prohibited. The term 'waste' among other things shall specifically include:

\* . \* \* \* \*

"(h) Surface waste or surface loss, including the storage either permanent or temporary of crude petroleum oil, or the placing any product thereof, in open pits or earthen storage, and all other forms of surface waste or surface loss, including unnecessary or excessive surface losses, or destruction without beneficial use, either of crude petroleum oil or of natural gas.

\* \* \* \* \*

"(j) The production of crude petroleum oil in excess of transportation or market facilities or reasonable market demand. The Commission may determine when such excess production exists or is imminent and ascertain the reasonable market demand."

Appellee has advanced no point against the order of the Railroad Commission fixing the daily allowable for the state at approximately 1,800,000 barrels of oil; so, without argument or citation of authority we shall asume that this allowable was legally made under the provisions of Art. 6049d, supra, and other pertinent statutes. It follows then, that in the judgment of the Commission the State as a whole can produce and market without waste 1,800,000 barrels of oil daily. In fixing the state allowable, the Commission necessarily based its finding upon the market demand of the entire state. It would be impossible to isolate one field from all of the rest of the State in ascertaining the reasonable market demand of the State, for the reason that no more than a certain amount of oil can be sold and used for the entire state for current consumptive purposes. It is undisputed that the amount of oil which could be produced without waste from all of the fields in the State of Texas greatly exceeds the amount which could be sold and used without over-production. The demand of or need for oil from one pool has a direct relation to the oil available from other pools, especially from pools producing substantially the same kind of oil.

■ We have many oil pools in Texas. The Legislature, by Article 6049d, Sec. 6, supra, vested the Commission with the power to prorate the state allowable among these pools, with the limitation on its power that it could not unreasonably discriminate "in favor of one pool as against another"; this on two provisos: (1) the reasonable market demand of one pool shall not be discriminated against in favor of any other pool, (2) the Commission shall ascertain the reasonable market demand of each such respective pool as the basis for determining the allotments to be assigned each such respective pool, to the end that such discrimination may be prevented. It is clear from the very language of Sec. 6, of Art. 6049d, supra, that the proration orders of the Commission—the allocating and apportioning of the state allowable among the oil pools of the state—can not be based upon the potential production of each of the several pools, but must be upon "reasonable market demand of each such respective pool."

■ But it is equally clear that proration cannot be made upon the market demand of each pool, as a separate producing unit, for the market demand of some one pool might consume all of the state allowable; so, proration must be based on the market demand of each pool as its market demand enters into and in the judgment of the Commission constitutes a fair proration as it relates to the market demand of the entire state—1,800,000 barrels of oil daily. Bay Petroleum Corp. v. Corporation Commission, D.C., 36 F.Supp. 66.

■ Since the Legislature has not defined the term "reasonable market demand," we submit the following definition of the term as expressing the legislative. intent in its use in Sec. 6 of Art. 6049, supra: "reasonable market demand" as used in the oil industry, means the amount of oil reasonably needed for current consumption, together with a reasonable amount of oil for storage and working stocks.

■ There are two gounds of "waste," "underground" and "aboveground." It lies within the power of the Commission, and is its duty, to prevent waste of both kinds. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73.

■ In estimating the "reasonable market demand of each such respective pool," as that term is defined by us, so as

to prevent waste, the Commission made its orders with the intent to keep the state's production from exceeding current consumption—1,800,000 barrels daily. This intent on the part of the Commission has support in Champlin Refining Co. v. Corporation Comm. of Okl., 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062, 86 A.L.R. 403. Julian Oil & Royalties Co. v. Capshaw, 145 Okl. 237, 292 P. 841; Danciger Oil & Ref. Co. v. Railroad Commission of Texas, Tex.Civ.App., 49 S.W.2d 837. In fixing the State's allowable, and in dividing this allowable among the state's oil pools, the Commission had the right to consider, and in support of its orders necessarily considered, the following facts: (1) that production in excess of the reasonable market demand of the State would create excessive storage, and result in losses from fire, evaporation, leakage, and the like; and (2) that experience in the industry has shown that whenever production materially exceeds market demand, prices are likely to drop so low that wholesale abandonment of small wells takes place and they must be plugged, and the oil which could have been recovered from such wells is wasted. Appellee does not deny that the evidence raised these fact issues, but on the contrary insists that they were fact issues necessarily found by the court against appellants' contention. There being in the record reasonable evidence to support these issues in favor of appellants, and a finding thereon being within the jurisdiction of the Commission, the trial court was without power to find contrary to the presumed findings made by the Commission in support of its orders. Gulf Land Co. v. Atlantic Refining Co., supra.

 Appellee's proposition that it has the right "to produce the quantities of oil daily which it can produce without waste" in its application to appellee's pool as against the interest of the other pools of the state, might, and probably would result in taking from some of the other pools the right to participate in the state allowable of 1,800,000 barrels and thereby result in a gross discrimination in favor of appellee as against the other pools of the state.

 We now review appellee's theory of its case—that it has the right "to produce the quantities of oil daily which it can produce without waste," within the physical boundaries of the pool. (1) If invoked in favor of appellee, as just stated above, it would probably result in a gross

discrimination in its favor as against the interests of the other pools. (2) Appellee would support its proposition on the theory that "correlative rights are not involved." This issue is material only as among the owners of some certain pool. When the Commission satisfactorily adjust the correlative rights of the respective owners, then the pool, if appellants' proposition is the law, would be considered as a unit, and if appellee, owning the Conoco-Driscoll oil pool, has the right to invoke its proposition, then the owners of a pool, with their correlative rights adjusted, could also invoke the proposition. Again, if appellee's proposition is the law, in order to increase its production to the full measure of the proposition, one great oil company could purchase the interests of the other owners. Again, if the only distinction is "correlative rights," a major company could purchase a large interest in a great field, such as the East Texas Oil Field, so great that correlative rights would not be in issue, and then invoke appellee's proposition to increase its production; having a market, having transportation facilities, there being no correlative rights at issue, the Commission would be forced to grant it unlimited production, subject only to the limitation of waste. Again, a great new field might be discovered; what would be its rights to share in the state allowable of 1,800,000 barrels of oil daily? (3) Appellee insists that Article 6049d, Sec. 6, cannot be so construed as to take from it its market and give it to other pools. That is not the legal effect of the orders complained of. These orders deny appellee the right to unlimited production, subject only to the issue of waste, as waste relates to its pool as an isolated unit of production. But the Commission was not dealing with appellee's market as such, but only as this controlling element is considered in connection with the market of the other pools in the state, in prorating among them the state allowable. Appellee's market has not been taken from it, except to the extent that the Commission deemed necessary in order to make a fair and equitable proration of the state allowable among the reasonable market demands of the other oil pools. The Commission simply said to appellee that, though it controlled its pool, it could not use its control as a legal principle to seize a lion's share of the state allowable at the expense of the other pools. (4) Appellee advances the following proposition: "By reducing the allowable from Appellee's field, they make it

impossible for purchasers who, under existing contract, have heretofore regularly purchased from said field, to obtain their requirements from Appellee, thus forcing them to go to other fields to supply their needs. * * * Appellee further insists that since the orders in question restrict production from the Conoco-Driscoll field some 3,000 barrels below the amount for which a market demand exists in that field, and more than 1,000 barrels below the amount that the field can produce without waste, the orders attacked are without statutory support."

This proposition is denied. If appellee must be given the right to produce and sell 4,000 barrels of oil per day—and that is its proposition—this construction of Art. 6049d, Sec. 6, would take from the Commission all power to administer equitably the proration laws, since all other oil pools could invoke the proposition to increase their production.

In attempting to distinguish appellee's case, Bay Petroleum Corp. v. Corporation Commission, supra, appellee says: "It is to be borne in mind that the three-judge Court was a trial Court and made fact determinations as the basis of its judgment. That Court found as a fact that producers of oil from flush fields were monopolizing the markets, and that stripper wells were faced with the necessity of premature abandonment, which would result in the loss and waste of enormous quantities of oil. That issue was raised by Appellants in the case at bar, and it was determined against them."

The loss from "stripper wells" was one of the basic grounds of the orders complained of herein. Since there was evidence to support the Commission's findings of waste in relation to the stripper wells, the court was without power to set aside these presumed findings. Gulf Land Co. v. Atlantic Refining Co., supra.

■ Appellee does not complain that, in the application of the formula of proration to its pool, it was discriminated against —a point it could not make for its quota exceeds the quota under the formula by seven or eight barrels per well per day; nor does it complain that, in allocating the said allowable of 1,800,000 barrels per day it was discriminated against. Simply stated, its point is that the Commission, under Art. 6049d, Sec. 6, supra, is without power to prorate the state allowable among the oil pools of the state on 'he basis of their reasonable market demand; that the Commis-

sion is without power to restrict the reasonable market demand of its pool, except as the market itself is limited by the physical element of waste within the physical boundaries of the pool. In our judgment, appellee has not correctly construed the proration laws of the State, as they apply to its field.

It follows that the court erred in decreeing null and void, and in enjoining appellants from enforcing, the orders of April 22, 1941. It is therefore our order that the judgment of the lower court be reversed, and that judgment be here rendered for appellants validating in all respects, as between appellants and appellee, the orders of April 22, 1941; it is further ordered that all injunctions granted by the lower court in support of its judgment, and in controlling and limiting the production from the Conoco-Driscoll oil field, be and the same are hereby dissolved.

Reversed and rendered.