

# THE ATTORNEY GENERAL
# OF TEXAS

Grover Sellers

XXXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Olin Culberson, Chairman
Railroad Commission of Texas
Austin, Texas

Dear Sir:

Opinion No. O-7068
Re: Application of Rule 37 and
other conservation regulations
to unproven territory.

Receipt is acknowledged of your letter of January 29, 1946, which reads as follows:

"The Railroad Commission has a statewide spacing rule that is applicable until such time as special field rules can be promulgated after discovery of oil by wildcat operations.

"This rule provides that no well shall be drilled nearer than 330 feet to lease or property line and requires wells to be spaced no closer than 933 feet on the same lease. These same statewide rules also provide for casing rules and other rules governing the drilling and operation of such lease in the event no special field rules are requested by the operator.

"In the Kemp area of Kaufman County, different operators owning town lots that are only 50 feet by 150 feet in area are filing notices of intention to drill on such small tracts. The policy of the Commission has always been to set down for hearing any notice of intention to drill a wildcat well which is nearer than 330 feet to a property or lease line as an exception to Rule 37, which is the spacing rule.

"QUESTION 1: Where the notice of intention to drill shows the location to be nearer than 330 feet to a property or lease line, is the Commission, under the statewide spacing rule, required to set such notice of intention to drill for hearing as an exception to Rule 37,

"QUESTION 2: Can the Commission require more than the filing of notice of intention to drill in an area that does not yet have production.

"In view of the fact that different operators are insisting that they do not have to wait for hearing on exceptions to drill by reason of their claiming wildcat operations, may the Commission not ask for an emergency ruling on the question and that you immediately give us your decision."

As we understand your first question, you desire to be advised whether or not Rule 37, the statewide spacing rule, has application to

wildcat operations. This rule was originally promulgated on November 26, 1919, and, as amended May 29, 1934, January 25, 1940, January 1, 1942, February 18, 1943, and May 1, 1944, reads as follows:

"Section (a). No well for oil or gas shall hereafter be drilled nearer than nine hundred thirty-three (933) feet to any well completed in or drilling to the same horizon on the same tract or farm, and no well shall be drilled nearer than three hundred thirty (330) feet to any property line, lease line or subdivision line; provided that the Commission, in order to prevent waste or to prevent the confiscation of property, may grant exceptions to permit drilling within shorter distances than above prescribed when the Commission shall determine that such exceptions are necessary either to prevent waste or to prevent the confiscation of property. When exception to such rule is desired, application therefor shall be made by filing Form 1 in duplicate, completely filled out, with the Deputy Supervisor of the Railroad Commission in the Commission District where the well or wells are located, which application shall be accompanied by a plat or sketch drawn to the scale of one (1) inch equalling four hundred (400) feet, accurately showing to scale the property on which permit is sought to drill a well under an exception to this rule, and accurately showing to scale all other completed, drilling and permitted wells on said property; and accurately showing to scale all adjoining surrounding properties and wells. Such application shall be verified by some person acquainted with the facts, stating that all facts therein stated are within the knowledge of the affiant true and that the accompanying plat is accurately drawn to scale and correctly reflects all pertinent and required data. Such exception shall be granted only after at least ten (10) days' notice to all adjacent lessees affected thereby has been given, and after public hearing at which all interested parties may appear and be heard, and after the Commission has determined that an exception to such rule is necessary either to prevent waste or to protect property belonging to the applicant from confiscation. All pending applicants shall be amended to conform to this rule before being acted upon.

"SECTION (B). In order to prevent waste or to prevent the confiscation of property, the Railroad Commission of Texas may upon its own motion or order, issue or grant a permit or permits for the drilling of any wells or wells for oil or gas nearer than nine hundred thirty-three (933) feet to any well completed in or drilling to the same horizon on the same tract or farm, and nearer than three hundred thirty (330) feet to any property line, lease line or subdivision line as hereinbefore prescribed whenever the Commission shall determine that the drilling of any such well or wells is necessary to prevent waste or to prevent the confiscation of property. When in the opinion or judgment of the Commission waste or confiscation of property is reasonably imminent or is taking place on any leasehold, the Commission may, on its own initiative or motion, order a hearing for the purpose of determining whether such waste or confiscation of property is taking place. Such permit or permits shall be issued or granted only after at least ten (10) days' notice to the owners of said leasehold and to .11 adjacent lessees affected thereby has been given, and after public hearing at which all interested parties may appear and be heard and after the Commission has determined that the drilling

of any well or wells for oil or gas is necessary either to prevent waste or to protect the owners of said leasehold from confiscation.

"SECTION(C). In filing FORM 1 as hereinabove provided it shall not be necessary to file more than one plat.

"SECTION ⟨D). In the interest of protecting life, and for the purpose of preventing waste and preventing the confiscation of property, the Commission reserves the right in particular oil and gas fields to enter special orders increasing or decreasing the minimum distances provided by this rule.

"SECTION (E). No well drilled in violation of this rule without special permit obtained, issued or granted in the manner prescribed in said rule, and no well drilled under such special permit or on the Commission's own order which does not conform in all respects to the terms of such permit shall be permitted to produce either oil or gas, and any such well so drilled in violation of said rule, or on the Commission's own order shall be plugged.

"SECTION (F). This rule shall in no wise rescind, abrogate or modify the provisions of special orders applicable to the spacing of wells in particular fields requiring minimum spacing distances either greater or smaller than provided herein.

"SECTION (G). This rule shall become effective February 18, 1943, and so remain until changed by order of the Commission.

"In the adoption and promulgation of this order, it is here declared that the Commission intends to adopt each phrase, sentence and paragraph separately and independently of each other such phrase, sentence and paragraph and if any portion of this order or any portion of the rule hereby adopted shall be declared invalid, such declaration and such invalidity shall not affect any other portion."

By special order dated May 29, 1934, known as the "subdivision rule," the Railroad Commission provided:

"IT IS ORDERED by the Railroad Commission of Texas, That in applying Rule 37 (Spacing Rule) of Statewide application and in applying every special rule with relation to spacing in every field in this State, no subdivision of property made subsequent to the adoption of the original spacing rule will be considered in determining whether or not any property is being confiscated within the terms of such spacing rule, and no subdivision of property will be regarded in applying such spacing rule or in determining the matter of confiscation if such subdivision took place subsequent to the promulgation and adoption of the original spacing rule.

"IT IS SO ORDERED, This the 29th day of May, A.D. 1934."

It is observed from a careful reading of Rule 37 that there is no express provision in the rule which would limit its operation to oil fields

or proven territory. It is obvious that if the rule is not so limited, then by its very terms and provisions, anyone desiring to drill a well for oil or gas anywhere in the State of Texas must comply with the rule, and if the proposed location of the well is nearer than 330 feet of any property line, lease line, or subdivision line, then such well may be drilled under one of the exceptions to the rule. By its terms the Commission has stated that such an exception will be granted only after notice and hearing. The notice provision of the rule is in compliance with Art. 6036a, Vernon's Annotated Civil Statutes, and is mandatory. Rabbit Creek Oil Company vs. Shell Petroleum Corporation, 66 S. W. (2d) 737; Sun Oil Company vs. Railroad Commission, 68 S.W. (2d) 609, reversed on other grounds, 126 Tex. 269, 84 S.W. (2d) 693; Gulf Land Company vs. Atlantic Refining Company, 134 Tex. 59, 131 S.W. (2d) 73.

The view that the rule has no application to unproven territory seems to have originated in the expressions of Associate Justice Blair of the 3rd Court of Civil Appeals. In his opinion in the Rabbit Creek Oil Company case, supra, page 739, he states:

"Exceptions are only necessary after the particular field has been proved. . . ." (Emphasis ours)

The foregoing expression in the Rabbit Creek Oil Company case, however, in the opinion of this Department, is merely dictum not necessary to a decision of the case. This for the reason that the application in that case was for an exception in the East Texas Oil Field after its discovery, and the case deals with the matter of goving notice to interested parties of hearings held on such exceptions. It holds that the issuance of a permit without notice and hearing is invalid.

Again, in Mr. Justice Blair's dissenting opinion in the case of Sun Oil Company vs. Railroad Commission, 68 S.W. (2d) 609, 614-622, the following expressions are found:

"In each oil and gas circular promulgated by the commission since the above amendment in March, 1923, rule 37 has been designated as a "general rule," although it has always exempted proven salt dome fields and has always been construed by the commission as having no application to unproven or wildcat fields. . . ." (Emphasis ours)

"Since this is true, and since such rules necessarily vary in different oil fields, and since they are subject to frequent variations and change at any time and have no application to 'unproven fields,' the rules in force at the time the oil is sought to be produced should be applied; and the commission has always so construed and applied its spacing rules and regulations. The commission has never assumed the power or authority to deprive any owner of his oil and gas estate in land by any spacing rule for oil wells. Each such rule has from its inception and as a part of it provided for an exception 'to protect vested rights.'" (Emphasis ours)

Hon. Olin Culberson, page 5 (O-7068)

"If the majority view is correct, and if appellees in these suits were required to take cognizance of and contract with reference to rule 37 as promulgated in 1919, then they would be compelled to ascertain whether their lands were located in an unproven oil field, or whether, if in an oil field, it was a 'salt dome field,' because in either instance rule 37 would have no application under its own terms and the construction uniformly given it. But, notwithstanding the rule has no application to unproven fields, or salt dome fields, nor the fact that no oil field was in  prospect or had been though of where the lands of appelles are situated until long after rule 37 was adopted, still the majority view requires that they or that 'all parties leasing land subsequent to its promulgation . . . must contract with reference to this settled rule.' . . ."

These expressions of Mr. Justice Blair are found in a dissenting opinion and do not reflect the view of the majority. The holding of the majority was that the lease of a 2.59 acre portion of a much large tract of land, capable of development in compliance with the spacing rule, was an unlawful subdivision in derogation of the spacing rule. The 2.59 acre tract was held not entitled to c onsideration as a tract separate and apart from the larger tract from which it was divided.

The dicta of Mr. Justice Blair expressed in the Rabbit Creek case and in the Sun Oil Company case seem to have crystallized in his holding in Shell Petroleum Corporation vs. Railroad Commission, 116 S.W. (2d) 439, writ dismissed. In his opinion in that case, the broad statement is made that:

"Neither  rule 37 of the so-called state-wide application as promulgated by the Railroad Commission in 1919, nor any amendment thereto, nor any special rule 37 has any application to territory not known nor anticipated to be productive of oil or gas; and the rule inhibiting voluntary subdivision of lands which could have been developed as a whole in order to circumvent the provisions of rule 37 has no application to subdivisions of lands prior to the discovery of oil and gas in the territory where the lands are located. . . .

"The Railroad Commission has continuously interpreted rule 37 as having no application to unproved territory. It did promulgate an order in May, 1934, wherein it is provided that no subdivision of lands after the so-called state-wide rule 37 was promulgated in 1919 would be considered in determining whether or not property is being 'confiscated' within the meaning of that  term as used in the spacing rule. Whatever construction may be placed upon this order as applying to subdivisions after 1919, it is operative only as to oil fields that have been discovered prior to the time of the subdivision, because in 1932 the Legislature enacted a statute, declaratory or expository in its nature, which provided in effect that the Railroad Commission is without authority or power to restrict or in any manner limit the drilling of wells for the purpose of exploring for oil or gas in territory not known to produce either oil or gas. Chapter 2, section 2, Acts 1932, 42nd Leg., 4th C.S. p. 3, and amended in other particulars by Acts 1935, 44th Leg., ch. 76, section 3, p. 180, Vernon's Ann. Civ. St. art. 6014a. So it is immaterial whether this act be regarded as expository, expressing the view of the Legislature that the commission has never had the power or authority to restrict the drilling of wells in territory

not known to produce oil and gas; or whether the act be considered as of that time withdrawing from the Railroad Commission the power to apply a spacing rule regulating wells in a territory not known or anticipated to be productive of either oil or gas; because under either view, the commission is without authority to restrict wells for oil or gas in territory not known to be productive of oil or gas."

Taken at face value, this statement would seem to be a direct answer to your first question. It is not believed, however, that the court intended to announce an interpretation of Rule 37 so far reaching. On motion for rehearing in this case, Mr. Justice Baugh stated;

"The writer concurs in the disposition of this appeal made in the original opinion herein by Associate Justice BLAIR; and in his conclusion that the voluntary subdivision rule originally announced by this court in December, 1933, and January, 1934 (see the several rule 37 cases reported in 68 S.W. 2d 609-628, supra), should not and does not apply to instances where one in good faith acquires fee title to land in unproven territory; and such acquisition was not in contemplation of oil development. However, the writer does not construe the provisions of chapter 2, section 2, Acts 1932, 4th C.S. 42nd Leg., as amended by Acts 1935, 44th Leg., c. 76, § 3, Vernon's Ann. Civ. St. art. 6014a, as limiting or governing the rules and regulations of the Railroad Commission in its administration of the conservation laws. I concur in the construction of these acts given by Chief Justice McLendon, in No. 8570, T. P. Nash et al, v. Shell Petroleum Corporation et al., Tex. Civ. App., _____ S.W. 2d _____, [1] this day decided. I deem it advisable to make this statement that there may be no misapprehension about the respective views of the different members of this court."

It will be noted that Mr. Justice Baugh limited his holding (that the rule does not apply to unproven territory) to instances where one in good faith acquires fee simple to land in unproven territory and such acquisition is not in contemplation of oil development. He further holds that Art. 6014a, Vernon's Ann. Civ. Stat., referred to by Mr. Justice Baugh, is not to be interpreted as limiting the Railroad Commission in its application of the spacing rule.

The views of Chief Justice McClendon, also sitting on the 3rd Court of Civil Appeals at that time, are given in the case of Nash vs. Shell Petroleum Corporation, 127 S.W. (2d) 522, writ dismissed. His holding is limited to the voluntary subdivision rule. It is that where title to a tract of land is segregated by deed conveying fee simple title on November 14, 1929, about a year before the discovery of oil in the East Texas Field, such land is not within the subdivision rule and an applicant is entitled as a matter of law to drill one well on the tract. Chief Justice McClendon further held that he did not concur in the holding of Mr. Justice Blair in Shell Petroleum Corporation vs. Railroad Commission, supra, that Art. 6014a deprived the Commission of the power to apply rule 37 to other than proven territory.

Another case decided by the 3rd Court of Civil Appeals is also pertinent to your first question. In Shell Petroleum Corporation vs. Railroad Commission, 133 S.W. (2d) 194, write refused, Mr. Justice Baugh held that where lands are leased expressly for the purpose of oil development, Rule 37 and the subdivision rule are applicable to such lands, notwithstanding that the area involved is not proven territory. He said:

". . . But where lands are leased expressly for the purpose of oil development, an entirely different situation is presented. In the latter instance, whether the lease be in proven territory or not, the conservation laws become applicable to the subsequent development thereof; and the rights of the parties become referable to the rules and regulations of the Commission governing the development of the property which the lessor himself contemplated and which he required of the lessee. Nash v. Shell Pet. Corp., supra. Under these circumstances, application of the provisions of the rule, as a conservation measure, is as essential in a given area before the discovery of oil as it would be after such discovery." (Emphasis ours)

Further illustrating the 3rd Court of Civil Appeals' interpretation of the subdivision rule is the following:

". . . In consequence, Question '1' must be answered in the negative under the several decisions holding that the 'voluntary subdivision rule' as announced by the courts and as later promulgated by the Commission by its rule of May 29, 1934, is not applicable where a tract of land is subdivided by mere fee conveyance from a larger tract prior to the discovery of oil in the area or territory where the land is situated. Shell Pet. Corp. v. Railroad Commission, Tex. Civ. App., 116 S. W. 2d 439, error dismissed; Nash v. Shell Pet. Corp., Tex. Civ. App., 120 S.W. 2d 522, error dismissed; Shell Pet. Corp. v. Railroad Commission, Tex. Civ. App., 120 S.W. 2d 526, error dismissed." (Emphasis ours)

(Wencker vs. Railroad Commission of Texas, 149 S.W. (2d) 1009)

The attention of the Commission is invited to the statement in each of Judge Blair's opinions to the effect that "the Railroad Commission has continuously interpreted rule 37 as having no application to unproven territory." Long standing administrative interpretation of rules and regulations is persuasive in passing upon the intent of the regulatory body. We have not been advised by the Commission as to the accuracy of such expresssions, and note the statement in your letter to the effect that, "The policy of the Commission has always been to set down for hearing any notice of intention to drill a wildcat well which is nearer than 330 feet to the properly or lease line as an exception to Rule 37, which is the spacing rule." All of Judge Blair's expressions are found in his opinions prior to the opinion of the majority of the Court in Shell Petroleum Corporation vs. Railroad Commission, 133 S.W. (2d) 194, which opinion was approved by the Supreme Court by its refusal of a writ of error. The holding in the Shell case is clear, and we therefore assume that the Commission has had no such administrative interpretation of Rule 37 since the date of the Shell opinion, November, 1939.

Hon. Olin Culberson, Page 8 (O-7068)

It is believed that the practical effect of these holdings may be stated as follows:  (1) that the voluntary division rule does not apply to the conveyance of land by fee transfer occurring prior to the discovery of oil, when not made in contemplation of oil development; (a) that when an interest in the subsurface estate in land is conveyed by lease or other means contemplative of oil development, whether the conveyance be in proven territory or not, the conservation laws, including Rule 37 and the subdivision rule, become applicable to the subsequent development of the land.

Therefore, in answer to your first question, we hold and you are advised, that a lessee under an oil and gas lease may not undertake to drill a well on a tract of land not susceptible of development in keeping with the spacing distances recited in statewide Rule 37 without first applying to the Commission for a permit under an exception to Rule 37 and having notice issue and hearing held as therein provided. We hold this to be true notwithstanding the evidence adduced at the hearing may show that such lessee is entitled to drill such well as a matter of right. This for the reason that the Legislature has designated the Railroad Commission as the body whose duty it is primarily to determine such facts. Gulf Land Company vs. Atlantic Refining Company, 134 Tex. 59, 131 S.W. (2d) 73.

It is believed that the answer to your second question, whether the Commission may require more than the filing of a notice of intention to drill in an area that does not yet have production, is to some extent, at least, embraced within our answer to your first question.

Railroad Commission Rule No. 9 presently in force and effect reads as follows:

"(a) NOTICE OF INTENTION TO DRILL OR DEEPEN. Notice shall be given to the Railroad Commission of the State of Texas of the intention to drill or deepen any oil or gas well and of the exact location of each and every such well. Such notice shall be given by filing in duplicate Form 1 of the Commission, attached hereto and made a part hereof with the Deputy Supervisor of the Railroad Commission in the Commission District where the well or wells are located. The location of any wildcat well shall be given by specifying the distance of same from at least two (2) of the lines of the survey within which it is to be drilled. In no case shall drilling operations be commenced until the expiration of at least five (5) days after the filing of Form 1 hereinabove mentioned. No permit to drill any well or wells for oil or gas shall be required by the Commission except for such wells as may be drilled under exceptions to Rule 37 of statewide application or as exceptions under special field rules governing the drilling of any well or wells which have been or may hereafter be adopted by the Railroad Commission.

"It is further ordered that all notices of intention to drill or deepen any well or wells under and as exceptions to Rule 37 of statewide application, or special rules governing the drilling of any well or wells in any particular oil field, or under any amendments thereto, shall be filed on Form 1, hereby adopted as a part of this order, with the Deputy Supervisor of the Railroad Commission in the Commission district where the well or wells are located.

"Provided further that it shall not be necessary to file more than one plat or sketch as provided for in Form 1 hereinabove mentioned, and adopted by the Commission."

In addition to the notice of intention to drill required by rule 9, there are many other rules and regulations that have been established by the Railroad Commission of statewide application that are intended to govern drilling operations in the event no special rules for a particular area have been promulgated. We have examined many of these rules and regulations and find in none of them an exception limiting their operations to proven territory. Paraphrasing Mr. Justice Baugh in Shell Petroleum vs. Railroad Commission, supra, it would seem to be just as important from a conservation standpoint that these rules be applied in a given area before the discovery of oil as it would be after such discovery. The interests of the State to be subserved, the prevention of fire hazards, the protection of underground strata and the surface of land from percolating waters, and the protection of adjoining property owners, would seem to be the same. It is just as important so far as the conservation policies of the State are concerned that its conservation laws and rules and regulations of the Railroad Commission be applied to the first or wildcat operations in a field as to subsequent operations after the field has been proved. We interpret your second question, therefore, as asking whether or not the Railroad Commission has been delegated authority by the Legislature to make such regulations effective in wildcat areas. The only limitation imposed by the Legislature we have found is that contained in Art. 6014a of Vernon's Ann. Civ. Stat. reading as follows:

"Nothing in this Act shall be construed as granting to the Commission any power or authority to restrict, or in any manner limit the drilling of wells for the purpose of exploring for crude petroleum oil or natural gas or both in territory not known to produce either such oil or gas."

The act referred to in the foregoing quotation is Chapter 2 of the Acts 42nd Leg., 4th C.S. pages 3-10. That act was a very comprehensive one amending several of the articles appearing in Title 102 of the Revised Civil Statutes of Texas, 1925, conferring broad authority upon the Railroad Commission in the matter of regulating the production, storage, and transportation of oil and gas. Two of the articles amended by the act of the 42nd Legislature were Articles 6014 and 6029, the former defining what shall constitute "waste," and the latter specifying the duty of the Railroad Commission to make and enforce rules, regulations, and orders for the conservation of oil and gas for a number of stated purposes.

As stated in answer to your first question, a majority of the present Court of Civil Appeals has held that the limitation contained in Art. 6014a has no application to the Railroad Commission's Rule 37, the Court stating:

"The purpose of this amendment was clearly to deny the Commission power to prevent or restrict oil development in unproven territory. The spacing rule is not in any proper sense a prevention or restriction upon drilling. It is merely one of a number of regulations to which all engaged in oil development must conform. To apply the amendment to the spacing rule would make it possible by dividing up leases into small tracts in advance of drilling to circumvent the rule entirely

in subsequently proven territory. It is not believed that the amendment manifests any such legislative intent." Nash vs. Shell Petroleum Corporation, 120 S.W. (2d) 522, writ dismissed) (Emphasis ours)

An even more limited interpretation of Art. 6014a is contained in the opinion of Mr. Justice Baugh in Shell Petroleum Corporation vs. Railroad Commission, 116 S.W. (2d) 439, 441, wherein he states:

". . . However, the writer does not construe the provisions of chapter 2, section 2, Acts 1932, 4th C.S. 42nd Leg., as amended by Acts 1935, 44th Leg., c. 76 § 3, Vernon's Ann. Civ. St. art. 6014a, as limiting or governing the rules and regulations of the Railroad Commission in its administration of the conservation laws. . . ." (Emphasis ours)

In answer to your second question, in view of Art. 6014a, we advise you that if a particular rule of statewide application does not have the effect of preventing or unreasonably restricting drilling operations in territory not known to produce either oil or gas, then such rule or regulation applies to such territory even in unproven territory unless, by its terms and provisions, it is clear that the Railroad Commission had a contrary intent.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ James D. Smullen

James D. Smullen
Assistant

APPROVED FEB 6, 1946
/s/ Carlos Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

JDS:jt:egw

APPROVED
Opinion Committee
By B W B
Chairman